Opinion issued September 17, 2009












 

 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-01004-CV

____________


STEPHANIE MANN, Appellant


V.


DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee





On Appeal from the 314th District Court 

Harris County, Texas

Trial Court Cause No. 2007-08235J





MEMORANDUM OPINION

 In this accelerated appeal, appellant, Stephanie Mann, challenges the trial
court's decree terminating her parental rights to her minor child, C.M., and naming
the Department of Family and Protective Services ("DFPS") as C.M.'s sole managing
conservator. In three issues, appellant argues that the evidence is legally and
factually insufficient to support the trial court's findings under section 161.001. Tex.
Fam. Code Ann. § 161.001 (Vernon Supp. 2009). In her fourth issue, appellant
argues that the evidence is legally and factually insufficient to support the
appointment of DFPS as the sole managing conservator of C.M. We reverse that
portion of the trial court's judgment terminating appellant's parental rights and affirm
the portion of the trial court's judgment appointing DFPS sole managing conservator
of the child.I. Background

 C.M. came into the care of TDFPS on September 24, 2007, just days after he
was born. At the time of C.M.'s birth, his older sibling, A.S., was in the care of DFPS
due to allegations that appellant left A.S. crying in her bed for hours, attempted to
mute A.S.'s cries by placing a pillow over her face, and "yanked the child really
hard." Appellant relinquished her parental rights to A.S. and the child was placed in
the care of the child's paternal grandmother, where she remained at the time of trial. (1)

 DFPS removed C.M. from appellant's care due to risk of physical abuse, as
indicated by appellant's alleged abusive conduct toward A.S. At trial, Reneka Dwann
Hayes, the DFPS caseworker for C.M, testified that C.M. was also removed because
appellant was not participating in the services required for the return of A.S., did not
have stable housing at the time of C.M.'s birth, and did not obtain prenatal care for
C.M. until she was court-ordered to do so in her seventh month of pregnancy.

 Hayes testified that although C.M. was removed from appellant's care due to
risk, DFPS determined that the child had not been physically abused or neglected, and
in fact, he was clean, healthy, dressed appropriately, and had no marks or bruises
when taken into DFPS care. Upon removal, C.M. was placed with a foster family,
where he remained until trial.

 On November 29, 2007, the Family Service Plan prepared by DFPS for
appellant was signed by the trial court. The court also signed additional temporary
orders that appellant was to complete in order to obtain the return of C.M. The
temporary orders required appellant to: (1) complete a psychological examination and
participate in counseling, following all recommendations, (2) complete parenting
classes, (3) complete a drug and alcohol assessment and follow all recommendations
of the assessment, (4) complete random drug tests, (5) remain drug-free, (6) refrain
from engaging in criminal activity, (7) maintain stable housing, (8) maintain stable
employment, (9) obtain her G.E.D., (10) successfully complete an anger management
program, and (11) complete additional services outlined in the family plan of service.
In addition to the court-ordered services, the family plan of service required appellant
to participate in all family visits with C.M. 

 Appellant testified that she completed some of the court-ordered services that
were required of her in order to obtain the return of C.M., but she failed to complete
others. For instance, appellant completed parenting classes, an anger management
program, and participated in individual therapy, though she missed at least ten
appointments. By the time of trial, appellant had not obtained her GED as required
by the court. She took the GED test once without preparing and subsequently failed,
but testified that she was enrolled in preparatory classes to take the test in the future. 

 Additionally, appellant did not comply with the court's order to refrain from
criminal activity. Specifically, appellant admitted drinking alcohol despite being
under the legal drinking age. In support of this admission, the evidence contained
several pictures from appellant's MySpace page showing appellant drinking or
intoxicated. Appellant offered inconsistent testimony about whether these pictures
were posted to her MySpace page while C.M. was in the care of DFPS. Appellant
initially stated that these photos were taken "about a year" before the trial, though she
did not remember if the photos were taken while C.M. was in the care of DFPS. 
Appellant then testified that the pictures were posted to her MySpace page while
C.M. was in DFPS care, and that the pictures were posted a couple of days after they
were taken.

 Appellant also conceded during trial that because she lived in a dormitory due
to her enrollment with the Job Corps training program, she was unable to provide
stable housing for C.M. Cheryl Lynn Powers Munson, child advocate for C.M.,
testified that Job Corps is a program that provides job training for young adults. 
Munson stated that she made a recommendation to appellant that appellant enroll in
the program. 

 As to her previous employment, appellant testified to working for three
different employers and being fired from two of those jobs during the time C.M. was
in DFPS's care. Appellant enrolled in Job Corps 11 months after C.M. was removed
and three months prior to trial, in order to "better [herself] and [her] child." At the
time of trial, appellant was living on campus at the Job Corps facility in San Marcos
and made a modest salary. Appellant stated that she would finish the Job Corps
program approximately eight months after the trial date and would be employed as
a medical assistant upon completing her training. 

 Finally, appellant offered inconsistent testimony about where she lived from
2006 to the time of trial. For example, appellant testified that she lived with her
grandmother continuously from the time DFPS placed her there when she was two
years old. However, she also stated that she lived with her sister and the children's
father in 2006 and admitted to living in four separate locations in 2007 and sleeping
on a couch. 

 With respect to appellant's visitation of C.M., while C.M. was in DFPS
custody, appellant testified that prior to entering the Job Corps program, appellant
visited C.M. at the DFPS office twice per month for an hour each visit. Appellant
attended all but one of the scheduled visitations during this time. After appellant
enrolled in the Job Corps program, however, she had no further visitations with her
son, though Hayes indicated that DFPS made C.M. accessible to appellant for
visitation during this time. Appellant requested one visitation a week before the trial,
but Hayes was unable to arrange the visitation due to scheduling difficulties. 

 Hayes testified that appellant's visits were "appropriate," though there were
times when appellant had trouble calming C.M. when he cried. Hayes stated that she
had to "step in" in order to calm C.M. when this occurred. This was denied by
appellant, however. Hayes testified further that appellant is not bonded to C.M., and
C.M. is not bonded to appellant. Therapist's notes introduced at trial indicated that
appellant does not think about C.M. 

 C.M.'s foster mother testified that, during the time C.M. was in her care,
appellant never sent C.M. clothing, food, or letters. She stated that C.M. calls both
her and her husband "mama" and "daddy" and considers them to be his family. She
explained further that she and her husband love C.M. and wish to adopt him, though
they knew when C.M. was placed with them that the placement could be temporary.

 Appellant, C.M.'s child advocate, and C.M.'s paternal grandmother (who was
previously granted primary managing conservatorship of A.S.) all advocated that
appellant's parental rights not be terminated in order to preserve family unity and
allow C.M. to have contact with his older sister. Nevertheless, all three persons
acknowledged that appellant was unable to care for C.M. at the time of trial. Indeed,
the child advocate expressed the opinion that appellant would be unable to care for
C.M. one year after trial, and stated that she did not know whether appellant would
be able to care for C.M. three years after the trial. Furthermore, C.M.'s paternal
grandmother expressed the opinion that appellant was like a child herself and not
ready for a child. However, she also stated that appellant had made progress over the
past year. 

 As to whom should be named conservator of C.M., both DFPS and the child
advocate suggested that the Department be named sole managing conservator of C.M.
However, the two differed as to with whom the child should be placed. DFPS
advocated for the child to continue to live with his foster family and be adopted by
them, but the child advocate expressed her belief that it would be in the child's best
interest to be placed with a family member so that C.M. would be able to maintain
contact with his birth family and older sibling. The child advocate completed a home
study on Cynthia Ramos, C.M.'s father's cousin, which showed that Ms. Ramos was
very eager and able to care for C.M. in the long term. (2) However, the child advocate
acknowledged that C.M.'s foster home was "excellent" and that it would be difficult
for C.M. to be separated from his foster family. Further, during her testimony, Ms.
Ramos acknowledged that she had never met C.M. 

 Appellant's counsel argued that appellant should be named permanent
possessory conservator of C.M., though appellant and her lawyer maintained
inconsistent positions on with whom the child should be placed. Appellant testified
that she would like for C.M. to be placed with Ms. Ramos until she finished Job
Corps training. However, in closing arguments, appellant's counsel argued for C.M.
to remain in his foster care placement. 

 Following the trial, the court granted DFPS's request to terminate the
appellant's parental rights with respect to C.M. The court appointed DFPS sole
managing conservator of C.M. and ordered that C.M. remain in his foster care
placement. The court denied appellant's request to be appointed possessory
conservator of C.M. 

II. Termination of Parental Rights

 In her first three points of error, appellant challenges the legal and factual
sufficiency of the evidence supporting the court's findings that (1) appellant engaged
in conduct or knowingly placed C.M. with persons who engaged in conduct that
endangered his physical or emotional well-being, (2) appellant failed to comply with
the provisions of a court order establishing the actions necessary for appellant to
obtain the return of C.M., and (3) termination of appellant's parental rights was in the
best interest of C.M.

A. Standard of Review

 In order to terminate parental rights under section 161.001 of the Family Code,
the petitioner must establish that the parent engaged in conduct enumerated in one or
more of the subsections of section 161.001(1) and must also show that termination
of the parent-child relationship is in the best interest of the child. Tex. Fam. Code
Ann. § 161.001 (Vernon 2008); Richardson v. Green, 677 S.W.2d 497, 499 (Tex.
1984). The petitioner must prove both prongs and may not rely solely on a
determination that termination is in the best interest of the child. Tex. Fam. Code
Ann. § 161.001; Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).

 It is well-established that parental rights are of constitutional dimension and
are "far more precious than property rights." Holick v. Smith, 685 S.W.2d 18, 20 (Tex.
1985) (quoting Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212 (1976)).
Because of the great importance of parental rights, grounds for termination must be
supported by clear and convincing evidence rather than a mere preponderance. Tex.
Fam. Code Ann. § 161.001; In re C.H., 89 S.W.3d 17, 23 (Tex. 2002). Clear and
convincing evidence refers to a degree of proof that will produce in the mind of the
factfinder a firm belief or conviction as to the truth of the allegations sought to be
proved. In re C.H., 89 S.W.3d at 25.

 When reviewing the legal sufficiency of the evidence in a case involving
termination of parental rights, we determine whether the evidence is such that a
factfinder could reasonably form a belief or conviction that there existed grounds for
termination under § 161.001(1) and that termination was in the best interest of the
child. See Tex. Fam. Code Ann. § 161.001(1), (2); In re J.F.C., 96 S.W.3d 256, 266
(Tex. 2002). In doing so, we examine all evidence in the light most favorable to the
finding, assuming that the "factfinder resolved disputed facts in favor of the finding
if a reasonable factfinder could do so." In re J.F.C., 96 S.W.3d at 266. We must also
disregard all evidence that the factfinder could have reasonably disbelieved or found
to be incredible. Id. However, we must be careful not to disregard all of the evidence
that does not support the finding, as doing so could "skew the analysis of whether
there is clear and convincing evidence." Id.

 When conducting a factual sufficiency review of the evidence in a termination
of parental rights case, we examine the entire record to determine whether "the
disputed evidence that a reasonable factfinder could not have credited in favor of the
finding is so significant that a factfinder could not reasonably have formed a firm
belief or conviction," that the two prongs of section 161.001 were met. See Tex.
Fam. Code Ann. § 161.001; id. If the evidence that could not be credited in favor of
the finding is so great that it would prevent a reasonable factfinder from forming a
firm belief or conviction that either termination was not in the best interest of the
child, or none of the grounds under section 161.001(1) were proven, the evidence will
be factually insufficient and the termination will be reversed. See Tex. Fam. Code
Ann. § 161.001; In re J.F.C., 96 S.W.3d at 266.

B. Texas Family Code section 161.001(1)(O) - Failure to Comply with Court
Order


 In her second point, appellant contends that the evidence is legally and
factually insufficient to support termination of her parental rights under section
161.001(1)(O). Specifically, appellant argues that section 161.001(1)(O) requires the
child who is the subject of the suit to have been removed from appellant's care due
to abuse or neglect, and appellant contends that there is no evidence indicating that
C.M. was removed due to appellant's abuse or neglect.

 In order for a court to terminate parental rights under section 161.001(1)(O),
the court must find by clear and convincing evidence that the parent "failed to comply
with the provisions of a court order that specifically established the actions necessary
for the parent to obtain the return of the child who has been in the permanent or
temporary managing conservatorship of the Department of Family and Protective
Services for not less than nine months as a result of the child's removal from the
parent under Chapter 262 for the abuse or neglect of the child." Tex. Fam. Code
Ann. § 161.001(1)(O) (Vernon 2008).

 We recently addressed the issue of whether section 161.001(1)(O) requires a
showing that the child who is the subject of the termination proceeding was removed
due to the abuse or neglect of that child, or whether section 161.001(1)(O) merely
requires a showing that the child was removed for any reason. See In re A.A.A., 265
S.W.3d 507, 512-16 (Tex. App.--Houston [1st Dist.] 2008, pet. denied). In In re
A.A.A., we reasoned that the legislature used the words "abuse or neglect of the child"
in section 161.001(1)(O) for a reason, and we held that the party seeking termination
must prove by clear and convincing evidence that the child subject of the suit was
removed due to abuse or neglect by the parent. Id. at 514-15. We also cited several
opinions from our sister courts holding that section 161.001(1)(O) requires proof that
the child was removed due to abuse or neglect. Id. (citing In re S.A.P., 169 S.W.3d
685, 705-706 (Tex. App.--Waco 2005, no pet.); In re K.H., No. 12-05-00077-CV,
2006 WL 3211299, at *5 (Tex. App.--Tyler Nov. 8, 2006, no pet.); In re M.B., No.
12-04-0350-CV, 2005 WL 3201071, at *4 (Tex. App.--Tyler Nov. 30, 2005, no pet.);
In re A.C., No. 12-04-00264-CV, 2005 WL 2404108, at *4 (Tex. App.--Tyler Sept.
30, 2005, no pet.); In re M.B., No. 07-04-0334-CV, 2004 WL 2867544, at *2 (Tex.
App.--Amarillo Dec. 14, 2004, no pet.)).

 With this principle in mind, we now examine the evidence to determine
whether it is legally and factually sufficient to conclude that C.M. was removed from
appellant due to abuse or neglect, as required under section 161.001(1)(O). See Tex.
Fam. Code Ann. § 161.001(1)(O); In re A.A.A., 265 S.W.3d at 515. In our decision
in In re A.A.A., we stated that whether a child was removed due to abuse or neglect
of the parent should be determined on a case-by-case basis, and we found other cases
instructive when making this determination. Id. Thus, we will perform the same
analysis here. 

 The instant case is similar to In re S.A.P., in which the Waco Court of Appeals
concluded that there was insufficient evidence to show that the child was removed
due to a parent's abuse or neglect. See In re S.A.P., 169 S.W.3d at 706. There, as in
this case, the caseworker testified that the child was removed shortly after birth due
to risk indicated by the parents' prior conduct, rather than because the child sustained
any abuse or neglect. Id. at 696, 705-06. Here, there is evidence that C.M. was
removed due to risk rather than his sustaining any actual abuse or neglect. Hayes's
testimony and notes reveal that abuse and neglect were both ruled out as indicators
of removal. Her notes also show that C.M. was clean, healthy, appropriately dressed,
and free of marks or bruises when he was taken into the care of DFPS. 

 In response to appellant's assertion that there is no evidence in the record that
appellant abused or neglected C.M., DFPS contends that appellant's abusive conduct
toward A.S. and her failure to comply with the service plan in that case indicate that
she jeopardized C.M.'s well-being. DFPS argues that appellant's jeopardizing C.M.'s
well-being supports the notion that C.M. was removed from appellant's care due to
abuse or neglect. We disagree. While appellant's abusive conduct toward A.S. may
indeed have jeopardized C.M.'s well-being and given DFPS reason to remove C.M.
under Chapter 262, it is not evidence that C.M. actually sustained abuse or neglect by
appellant. Further, though a parent's abusive conduct toward an older sibling may be
evidence of endangering conduct toward a younger sibling under § 161.001(1)(E), it
does not demonstrate that the parent engaged in abusive or neglectful conduct toward
the younger sibling, as required under section 161.001(1)(O). See Cervantes-Peterson
v. Dep't. of Family and Protective Servs., 221 S.W.3d 244, 253 (Tex. App.--Houston
[1st Dist.] 2006, no pet.); In re D.M., 58 S.W.3d 801, 811 (Tex. App.--Fort Worth
2001, no pet.).

 In support of its contention that a parent's conduct toward others in the home
jeopardizes a child's well-being and indicates that the parent engaged in abusive or
neglectful conduct toward the child who was removed, DFPS refers to two cases. In
the first, In re J.S.G., the court held that the parent's neglect of an older child could
indicate that "the physical and emotional needs of [the younger siblings] were
jeopardized." See In re J.S.G., No. 14-08-00754-CV, 2009 WL 1311986, at *7, *9
(Tex. App.--Houston [14th Dist.] May 7, 2009, no pet.). In the second, In re J.F.C.,
children were removed due to risk indicated in part by the parents' history of violence
toward each other and toward other children in the home. See In re J.F.C., 96 S.W.3d
at 270-71. However, both of these cases discuss the parents' conduct and the
resulting effects on the child's well-being as they relate to the best interest
determination under section 161.001(2) of the Family Code, not whether the child
was abused or neglected under § 161.001(1)(O). See In re J.S.G., 2009 WL 1311986,
at *7-*10; In re J.F.C. 96 S.W.3d at 270-72. Therefore, these cases are
distinguishable and do not support removal under section 161.001(1)(O). Tex. Fam.
Code Ann. § 161.001(1)(O). Thus, appellant's abusive acts toward A.S. cannot be
considered as evidence that she abused or neglected C.M. for the purposes of section
161.001(1)(O).

 The only indication that C.M. was removed for reasons other than appellant's
conduct toward A.S. comes from Hayes's testimony. Specifically, Hayes testified
that C.M. was removed because of (1) appellant's failure to obtain prenatal care until
she was court-ordered to do so in the seventh month of pregnancy, (2) appellant's
failure to comply with the service plan that was court-ordered in A.S.'s case, and (3)
appellant's failure to secure housing at the time of C.M.'s birth. While all of these
factors may indicate risk to C.M. if he were to remain under appellant's care, they do
not indicate that appellant abused or neglected C.M., leading to his removal. First,
although a failure to seek prenatal care may be an indication of the quality of
treatment the child will receive after being born, we can find no caselaw and DFPS
directs us to no caselaw holding that a parent's failure to seek prenatal care is
evidence of abuse to the child. Second, a parent's failure to participate in services
that were court-ordered following the removal of her first child may be an indication
that there is risk to the younger child due to the parent's not having remedied the
problems that brought the first child into DFPS care, but it does not indicate that the
parent actually abused or neglected the younger child. Third, the record does not
indicate that appellant moved frequently during the short time she had possession of
C.M., or that C.M. was exposed to unsafe or unsanitary living conditions, although
it does indicate that Appellant and C.M. were living with appellant's maternal
grandmother when C.M. was removed. Therefore, Hayes's testimony does not
provide evidence that C.M. was removed due to abuse or neglect by appellant, as
required under section 161.001(1)(O). 

 Our review of the record indicates that there was no evidence that appellant
abused or neglected C.M., causing him to be removed from her care. As we discussed,
appellant's failure to obtain prenatal care, her failure to comply with the service plan
for A.S.'s case, her failure to secure her own housing, and her abusive conduct toward
A.S. do not provide evidence that appellant abused or neglected C.M. Further, the
evidence shows that (1) C.M. was removed due to risk rather than abuse or neglect
to C.M., (2) abuse and neglect toward C.M. were ruled out as indicators of removal,
and (3) C.M. showed no signs of abuse or neglect at the time of removal. Viewing
this evidence in the light most favorable to the trial court's ruling, we conclude that
a reasonable factfinder could not have formed a firm belief or conviction that C.M.
was removed due to abuse or neglect by appellant, as required to support termination
under section 161.001(1)(O). Consequently, we hold that the evidence is legally
insufficient to support termination of appellant's parental rights to C.M. under section
161.001(1)(O).

C. Texas Family Code section 161.001(1)(E) - Conduct Which Endangers the
Child

 In her first point, appellant contends that there was no evidence that she or
anyone else engaged in conduct which endangered the physical or emotional well-being of C.M., and therefore the evidence is legally and factually insufficient to
support the trial court's finding that she endangered C.M. under section
161.001(1)(E). See Tex. Fam. Code Ann. § 161.001 (1)(E).

 When determining whether a parent engaged in conduct that endangers a child,
courts must examine the parent's conduct alone, including the parent's acts and
omissions. In re J.W., 152 S.W.3d 200, 205 (Tex. App.--Dallas 2004, pet. denied)
(citing In re D.J., 100 S.W.3d 658, 662 (Tex. App.--Dallas 2003, pet. denied); In re
D.M., 58 S.W.3d 801, 811 (Tex. App.--Fort Worth 2001, no pet.)). This includes
conduct both before and after the birth of the child who is the subject of the suit. Id.
(citing In re D.M., 58 S.W.3d at 812). Further, the court may consider parental
conduct that is not directed at the child and does not result in actual harm to the child.
In re D.M., 58 S.W.3d at 811. When determining whether a parent's conduct
endangers a child, courts must ask whether the conduct is such that it exposes the
child to loss or injury, or jeopardizes the child's well-being. Tex. Dep't. of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Additionally, to support
termination under section 161.001(1)(E), the State must prove that the parent engaged
in a "voluntary, deliberate, and conscious course of conduct" that endangers the child,
rather than a single endangering act or omission. Ruiz v. Tex. Dep't. of Family and
Protective Servs., 212 S.W.3d 804, 815 (Tex. App.--Houston [1st Dist.] 2006, no
pet.) (citing In re J.T.G., 121 S.W.3d 117, 125 (Tex. App.--Fort Worth 2003, no
pet.)).

1. Abusive Conduct Toward C.M.

 In her first point of error, appellant contends that there is no evidence that she
or anyone else engaged in conduct that endangered the physical or emotional well-being of C.M. In support of this contention, appellant points to evidence that DFPS
ruled out abuse and neglect toward C.M., C.M. was removed based on risk, and C.M.
was clean and healthy with no marks or bruises when taken into care. As we
discussed earlier, we do not find anything in the record to contradict the evidence that
C.M. was removed due to risk rather than his sustaining any abuse or neglect.
Therefore, there is no evidence that appellant engaged in endangering conduct under
section 161.001(1)(E) by abusing or neglecting C.M. However, there is other
evidence in the record that is relevant to determining whether appellant engaged in
conduct that may have endangered C.M. We now examine this evidence.


2. Conduct Toward A.S.

 We have held that "the manner in which a parent treats other children in the
family can be considered in deciding whether that parent engaged in a course of
conduct that endangered the physical or emotional well-being of a child." Cervantes-Peterson v. Tex. Dep't. of Family and Protective Servs., 221 S.W.3d 244, 253 (Tex.
App.--Houston [1st Dist.] 2006, no pet.). A number of our fellow courts of appeals
have also held that evidence of a parent's endangering conduct toward other children
or family members is relevant to a determination of whether the parent engaged in
behavior that endangered the child subject of the suit. See, e.g., In re Baby Boy R.,
191 S.W.3d 916, 925 (Tex. App.--Dallas 2006, pet. denied) (holding that a parent's
guilty plea of aggravated sexual assault of his step-daughter was evidence of conduct
endangering to the well-being of his unborn child); In re W.J.H., 111 S.W.3d 707,
716 (Tex. App.--Fort Worth 2003, pet. denied) (holding that abusive conduct toward
other children "can be used to support a finding of endangerment even against a child
who was not yet born."); In re D.L.N., 958 S.W.2d 934, 939 (Tex. App.--Waco 1997,
pet. denied) (holding that a parent's neglect of older children could indicate that the
child the subject of the suit "would face this type of treatment in the future if
returned" to the appellant). Thus, any abusive or neglectful conduct by appellant
toward C.M.'s older sibling, A.S., is relevant in an inquiry to determine whether
appellant's parental rights to C.M. should be terminated under section 161.001(1)(E).

 Appellant contends that there is only limited evidence that she engaged in
abusive conduct toward A.S. Appellant states that her denials of the behavior,
coupled with C.M.'s paternal grandmother's testimony that appellant never admitted
to her that she engaged in abusive conduct, support the finding that appellant never
abused A.S. 

 Our review of the record indicates that by her own admission, appellant told
the child advocate, Hayes, and the court that she had engaged in abusive conduct
toward A.S. The child advocate testified that appellant "admitted on three separate
occasions that she told her [A.S.] to 'shut the fuck up' and that she grabbed her
around her torso and squeezed her." It is not clear from the record whether the child
advocate meant that appellant made these admissions on three separate occasions or
that appellant engaged in the abusive conduct on three separate occasions. Appellant
contends that the child advocate meant that appellant made the admissions on three
separate occasions, and DFPS does not dispute this interpretation. Further, based on
the placement of the word "that" in the child advocate's sentence, we interpret the
testimony to mean that appellant made the admissions on three separate occasions,
rather than appellant engaged in the conduct on three separate occasions.

 Appellant points to her testimony at trial, wherein she denied harming A.S., as
evidence that she did not engage in conduct that endangered C.M. Although
appellant's denial weighs somewhat against her prior admissions, the trial court could
have reasonably disbelieved the denial considering other inconsistencies in her
testimony (i.e., testifying that she attended every counseling appointment, but then
admitting that she missed at least one; testifying that she lived with her grandmother
throughout the duration of the case, but then testifying that she lived at a number of
other residences; testifying that she complied with her service plan but later testifying
that she did not maintain stable housing or employment). Furthermore, the trial court
could have reasonably disbelieved C.M.'s paternal grandmother's testimony that
appellant never admitted to her that she harmed A.S. in light of appellant's
admissions to the caseworker, court, and child advocate. This supports the trial
court's finding that appellant engaged in physically abusive conduct toward A.S.,
which could be considered by the trial court in its determination that appellant
engaged in conduct which endangers C.M. Thus, looking at the evidence in the light
most favorable to the trial court's finding, a reasonable factfinder could have formed
a firm belief or conviction that appellant engaged in abusive conduct toward A.S. on
one occasion, thereby endangering the physical or emotional well-being of C.M. See
Cervantes-Peterson, 221 S.W.3d at 253.

3. Underage Drinking

 Responding to appellant's contention that there is no evidence that she
engaged in endangering conduct under section 161.001(1)(E), TDFPS directs us to
evidence that appellant engaged in underage drinking in violation of the court's order
that she refrain from criminal conduct. 

 Appellant's testimony, as well as pictures from appellant's MySpace page,
indicate that appellant drank alcohol in violation of the court order that she refrain
from criminal activity. In her testimony, appellant admitted to drinking despite
knowing that she is younger than the legal drinking age. Appellant admitted to
drinking at her sister's house and her admission was confirmed by two pictures from
appellant's MySpace page. The pictures were captioned, "At Ashley House
Dranking it Up [sic]," and "Me Helping Ashley Stand Up, Were Both Drunk [sic]." 
Furthermore, there were several photographs from appellant's MySpace page
showing her at a local bar. Appellant admitted to going to the bar, but said that she
was not drinking when she went. However, three of the pictures showing appellant
at the bar were captioned, "Me Dancing my ass off, I can dance when I drunk [sic],"
"Yall see how much we Dranked plus the one's that droped on the floor [sic]," and
"We were all fucked up." This evidence could lead a reasonable factfinder to firmly
believe that appellant engaged in underage drinking on these two occasions, despite
knowing that she was under the legal drinking age.

 The evidence at trial also indicated that appellant engaged in this underage
drinking during the time that C.M. was in the care of DFPS. Although appellant
testified that she could not remember if the photos were taken while C.M. was in
DFPS care, appellant also testified that the pictures were taken "about a year" before
trial, and the record reveals that C.M. was taken into care approximately 13 months
prior to trial. Furthermore, appellant stated that the pictures were posted to her
MySpace page while C.M. was in DFPS care and the pictures were posted a couple
of days after they were taken. This could lead a reasonable factfinder to conclude that
appellant engaged in underage drinking during the time C.M. was in the care of
DFPS. 

 We have held that a parent's engaging in illegal conduct despite knowing that
his or her parental rights are in jeopardy is evidence of endangering conduct under
section 161.001(1)(E). See Robinson v. Tex. Dep't. of Family & Protective Servs., 89
S.W.3d 679, 686-87 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (holding
mother's continued illegal drug use despite knowing that doing so violated the terms
of her family service plan was evidence of endangering conduct); In re J.N.R., 982
S.W.2d 137, 142 (Tex. App.--Houston [1st Dist.] 1998, no pet.) (holding father's
continued illegal activity, resulting in three arrests and jail time, knowing his parental
rights were in jeopardy, was evidence of a course of endangering conduct). However,
in those cases the parent had a long history of illegal conduct that endangered the
child. (i.e., 20 years of illegal drug use by the appellant in Robinson and multiple
arrests of the father in In re J.N.R.). See Robinson, 89 S.W.3d at 687; In re J.N.R., 982
S.W.2d at 142. In contrast, the evidence here does not indicate that appellant had a
long history of illegal conduct that resulted in incarceration or that had the effect of
endangering a child. The evidence reveals only two occasions in which appellant
engaged in underage drinking, and does not reveal that she had a drinking problem
that she failed to remedy. Therefore, although the evidence indicates that appellant
engaged in criminal conduct knowing that her parental rights were in jeopardy, it does
not demonstrate that appellant engaged in illegal activities of the degree or frequency
that we have previously held to be endangering conduct under section 161.001(1)(E).
This bears on whether appellant engaged in a course of endangering conduct as
required under Ruiz. See Ruiz, 212 S.W.3d at 815. 

4. Failure to Obtain Prenatal Care

 In reply to appellant's assertion that there is no evidence that appellant engaged
in endangering conduct, DFPS points to the fact that appellant did not obtain prenatal
care for C.M. until she was court-ordered to do so. DFPS contends that this is
evidence that appellant engaged in conduct that endangered C.M.'s physical or
emotional well-being. However, we can find no caselaw in which an appellant's
failure to obtain prenatal care was held to be evidence of endangering conduct under
section 161.001(1)(E). In fact, the Fourteenth Court of Appeals has held that evidence
that a mother "took pre-natal vitamins during her pregnancy undermines the argument
that she consciously engaged in a course of conduct that endangered her children's
well-being." In re A.S., 261 S.W.3d 76, 87 (Tex. App.--Houston [14th Dist.] 2008,
pet. denied). In the instant case, the evidence is undisputed that appellant took
prenatal vitamins prior to obtaining prenatal care. This weakens DFPS's argument
that appellant engaged in a course of conduct which endangered C.M. under section
161.001(1)(E). See id. 

5. Failure to Secure Safe and Stable Housing

 DFPS also suggests that appellant engaged in a course of conduct that
endangered C.M. under section 161.001(1)(E) because appellant failed to comply
with the court order to secure safe and stable housing. We disagree.

 By her own admission, appellant failed to maintain stable housing for a period
of at least six months. Indeed, appellant testified to living in four separate residences
in 2007 alone. However, the evidence introduced at trial does not indicate whether
appellant failed to maintain stable housing when she had A.S. or C.M. in her
possession, or whether her failure to maintain stable housing occurred only after the
children had been removed. Although the evidence shows that appellant was living
with her maternal grandmother for the few days she had possession of C.M., it does
not indicate whether this housing was inappropriate, unsanitary, or whether appellant 
moved frequently when C.M. was in her care. Furthermore, the State did not
introduce any evidence as to how the housing situation endangered C.M. Similarly,
the evidence does not show whether appellant's housing situation was unsafe,
unsanitary, unstable, or otherwise endangered A.S. prior to her removal from
appellant's custody. Therefore, it is impossible to determine from the record whether
appellant's failure to maintain stable housing occurred while she had custody of either
of her children, and if it did, whether it had the effect of endangering the children.

 A parent's failure to maintain stable housing when she has care, custody, and
control of her children is relevant to the determination of whether the parent engaged
in conduct which endangers her children under section 161.001(1)(E). See In re
M.N.G., 147 S.W.3d 521, 536, 538 (Tex. App.--Fort Worth 2004, pet. denied)
(holding that "conduct that subjects a child to a life of uncertainty and instability
endangers the physical and emotional well-being of a child," and that the mother's
"difficulty maintaining a stable home" was evidence of endangering conduct to the
child); In re J.M.M., 80 S.W.3d 232, 242 (Tex. App.--Fort Worth 2002, pet. denied)
(holding that mother's history of "engaging in a transient lifestyle" and frequent
moves with the children was evidence of endangering conduct). However, the cases
that have held a parent's failure to maintain stable housing to be endangering conduct
involve the parent's failure to provide stable housing to her children when they were
in the parent's care. See In re M.N.G., 147 S.W.3d at 536-38; In re J.M.M., 80
S.W.3d at 242. We can find no cases in which a parent's failure to maintain stable
housing after the child's removal was held to be evidence of endangering conduct
under section 161.001(1)(E). In this case, the evidence indicates that appellant failed
to maintain stable housing following the removal of C.M. The evidence does not
indicate, however, that appellant failed to maintain safe and stable housing while A.S.
and C.M. were in her care, endangering C.M. and A.S.'s well-being. Therefore, a
reasonable factfinder could not firmly believe that appellant's failure to maintain
stable housing following the removal of her children amounted to conduct
endangering their physical or mental well-being under section 161.001(1)(E).

6. Ceasing Visitation

 In its reply to appellant's contention that there was no evidence that appellant
engaged in endangering conduct to C.M., DFPS points to evidence that appellant
ceased visiting C.M. in violation of the court-ordered service plan. 

 The evidence is undisputed that appellant did not visit C.M. in the three months
prior to the trial, when appellant was enrolled in the Job Corps program in San
Marcos. Hayes testified that DFPS would have been "open to" visitation during this
time, had appellant requested it. It is undisputed that appellant requested one visit,
approximately one week prior to the trial, but DFPS was unable to arrange the visit
due to scheduling difficulties. 

 DFPS refers us to In re U.P. in support of its contention that appellant's failure
to visit C.M. in the last three months of the case was conduct that endangered the
child. See In re U.P., 105 S.W.3d 222, 236 (Tex. App.--Houston [14th Dist.] 2003,
pet. denied). Indeed, a parent's absence from a child's life is conduct that endangers
a child's emotional well-being. See id. (holding that the father's drug dealing, which
led to him being incarcerated for 12 months and left an "emotional vacuum" in the
child's life, was endangering conduct). However, in the current case, appellant failed
to visit her child for three months, far less than the 12 months the father was absent
from his child's life in In re U.P. Id. Further, appellant's absence was due to her
enrolling in the Job Corps program in an attempt to "better [herself] and [her] child,"
which is quite different than incarceration, which caused the father's absence in In
re U.P. Id. Because appellant's missed visitations with her child were due to a
worthwhile pursuit rather than incarceration and were for a much shorter period of
time than the father's absence in In re U.P., we do not find In re U.P. persuasive in
the instant case. Therefore, appellant's failure to visit C.M. in the last three months
of the case does not rise to a level that would constitute endangering conduct under
section 161.001(1)(E).

7. Failure to Comply with Court-Ordered Service Plan

 TDFPS also points to appellant's failure to comply with her court-ordered
service plan as evidence that appellant engaged in endangering conduct under section
161.001(1)(E). Specifically, TDFPS refers us to evidence that appellant violated the
court-ordered service plan by failing to maintain stable housing, engaging in
underage drinking, and ceasing visitations with C.M. 

 TDFPS directs us to In re R.F. in support of its contention that a parent's
failure to complete a service plan is conduct that endangers a child under section
161.001(1)(E). See In re R.F., 115 S.W.3d 804, 811 (Tex. App.--Dallas 2003, no
pet.). There, the Dallas court held that a mother engaged in conduct that endangered
her child under section 161.001(1)(E), and discussed the mother's failure to complete
her service plan in its analysis of the mother's endangering conduct. Id. However, the
court reasoned that the mother's failure to comply with her service plan was an
indication of her failure to remedy mental health and substance abuse problems. Id.
The court held that these mental health and substance abuse problems were
endangering conduct under section 161.001(1)(E). Id. The court did not hold that the
mother's failure to complete her service plan, in and of itself, was evidence of
endangering conduct. Id. Therefore, we cannot say that In re R.F. stands for the
proposition that a parent's failure to comply with a service plan alone is evidence of
endangering conduct under section 161.001(1)(E). Indeed, to hold that a parent's
failure to complete a service plan is evidence of conduct that endangers a child would
blur the distinction between sections 161.001(1)(E) and (1)(O). Thus, we do not
consider appellant's failure to comply with her court-ordered service plan to be
evidence of endangering conduct under section 161.001(1)(E).

8. Course of Endangering Conduct 

 Viewing the evidence in the light most favorable to the trial court's judgment
and disregarding all evidence the factfinder could have reasonably disbelieved or
found incredible, we hold that a reasonable factfinder could not have formed a firm
belief or conviction that appellant engaged in a course of conduct that endangered her
son. As we have discussed, appellant's failure to secure stable housing, her failure to
obtain prenatal care, and her failure to visit her son during the last three months of the
case do not rise to the level of conduct that endangers a child. Also, appellant's
failure to complete her service plan does not amount to conduct that endangers a
child. The evidence does reveal that appellant engaged in underage drinking and
admitted to multiple persons that she engaged in abusive conduct toward A.S. A
reasonable factfinder could firmly believe that appellant engaged in the abusive
conduct toward A.S. on one occasion, and that appellant engaged in underage
drinking on two occasions. This does not, however, amount to a course of
endangering conduct, which is required in order to prove that a parent engaged in
conduct which endangers a child under section 161.001(1)(E). See Ruiz, 212 S.W.3d
at 815. The evidence does not indicate that appellant engaged in abusive conduct
toward A.S. more than once, or that she had a long history of underage drinking. 
Because the evidence reveals only these few incidents, and does not indicate a history
or pattern of endangering conduct by appellant, a reasonable factfinder could not
firmly believe that appellant engaged in a course of conduct that endangers a child
under section 161.001 (1)(E). Therefore, we hold that the evidence is legally
insufficient to support the trial court's finding that appellant engaged in conduct
described by section 161.001 (1)(E).


D. Best Interest of the Child

 We need not examine whether it was in C.M.'s best interest for appellant's
parental rights to be terminated since termination of parental rights must be supported
by evidence that the parent engaged in conduct enumerated in at least one of the
subsections of section 161.001(1) as well as evidence that termination would be in
the child's best interest. Tex. Fam. Code Ann. § 161.001 (Vernon 2008); Richardson
v. Green, 677 S.W.2d at 499. Because we hold that the evidence is legally insufficient
to support the trial court's findings that appellant engaged in conduct described under
sections 161.001(1)(E) and (O) of the Texas Family Code, we reverse that portion of
the trial court's decree terminating appellant's parental rights to C.M. 

III. Conservatorship of the Child

 In her fourth issue, appellant questions the legal and factual sufficiency of the
evidence supporting the appointment of DFPS as the sole managing conservator of
C.M. Appellant concedes that she is unable to care for C.M. as the child's sole
managing conservator and instead requests that the court appoint Cynthia Ramos,
C.M.'s father's cousin, as C.M.'s sole managing conservator. Appellant also requests
that she be appointed possessory conservator of C.M., a request she made at trial, but
was denied. If we do not affirm the judgment of the trial court with regard to
conservatorship, appellant requests that we remand the case to the trial court in order
to conduct an evidentiary hearing on the issue.

A. Appointment of TDFPS as Sole Managing Conservator

 The termination of parental rights and the appointment of a non-parent as sole
managing conservator are two separate and distinct issues, each requiring different
elements to be proven, different standards of proof, and different standards of review. 
Compare Tex. Fam. Code Ann. § 161.001 with Tex. Fam. Code Ann. § 153.131(a)
(Vernon 2008); See also Earvin v. Dep't. of Family & Protective Servs., 229 S.W.3d
345, 351 (Tex. App.--Houston [1st Dist.] 2007, no pet.); In re J.A.J., 243 S.W.3d
611, 615-17 (Tex. 2007); In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).

 There is a rebuttable presumption that it is in a child's best interest for his
parents to be named his joint managing conservators. Tex. Fam. Code Ann. §
153.131(b) (Vernon 2008). In order to rebut this presumption and appoint someone
other than a parent as sole managing conservator of the child, a court must find that
appointment of a parent would "significantly impair the child's physical health or
emotional development." Tex. Fam. Code Ann. § 153.131(a) (Vernon 2008); In re
J.A.J., 243 S.W.3d at 616. Additionally, "[t]he best interest of the child shall always
be the primary consideration of the court in determining the issues of
conservatorship[.]" Tex. Fam. Code Ann. § 153.002 (Vernon 2008). Unlike the
standard of proof for termination of parental rights, the findings necessary to appoint
a non-parent as sole managing conservator need only be established by a
preponderance of the evidence. Tex. Fam. Code Ann. § 105.005 (Vernon 2008); In
re J.A.J., 243 S.W.3d at 616.

 Likewise, the standard of review for the appointment of a non-parent as sole
managing conservator is less stringent than the standard of review for termination of
parental rights. In re J.A.J., 243 S.W.3d at 616. We review a trial court's appointment
of a non-parent as sole managing conservator for abuse of discretion only. Id. (citing
Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982). Therefore, we will reverse
the trial court's appointment of a non-parent as sole managing conservator only if we
determine that it is arbitrary or unreasonable. Id.

 In conformity with the statutes governing conservatorship, the trial court made
several findings. Specifically, the trial court found that (1) the appointment of
appellant as managing conservator of C.M. would not be in the child's best interest
because the appointment would significantly impair C.M.'s physical health or
emotional development, (2) it would not be in C.M.'s best interest to appoint a
relative or another person as managing conservator, and (3) the appointment of DFPS
as C.M.'s sole managing conservator was in the child's best interest.

 Appellant admits that she is unable to care for C.M. and does not request that
she be named C.M.'s sole managing conservator. Instead, appellant argues that there
are no facts to support the finding that it would not be in C.M.'s best interest to
appoint Ramos as his sole managing conservator. Appellant asserts that the
appointment of Ramos as sole managing conservator is in C.M.'s best interest and
points to the evidence that (1) the child advocate recommended that C.M. be placed
with Ramos, (2) appellant and the paternal grandmother believed that Ramos
provided the best placement for C.M., (3) the home study on Ramos showed that she
was more than capable of taking care of C.M., and (4) the child advocate, appellant,
and the paternal grandmother wanted C.M. to be placed with Ramos so that he could
maintain contact with A.S. and his extended birth family. 

 Although this evidence indicates that C.M. would have been provided with a
safe and loving home with Ramos, there was other evidence in the record to show that
C.M. was doing well with his foster family and it was in his best interest to remain
with them. Testimony indicated that C.M. was bonded to his foster family, called his
foster parents "mama" and "daddy," and thought of them as his family. The foster
mother testified that she loved C.M. as one of her own children and wanted to care
for him in the long-term. Further, the child advocate testified that the foster home
was "excellent," and that it would be difficult for C.M. to be removed from the foster
home, where he had lived since he was only a few days old. Moreover, Ramos
testified that she had never met C.M. This evidence provides support for the trial
court's ruling that it would be in C.M.'s best interest for DFPS to serve as his sole
managing conservator so that he could remain with his foster family. For the
foregoing reasons, the trial court's decision with regard to conservatorship was not
arbitrary or capricious, and the evidence was legally and factually sufficient to
support the appointment of DFPS, rather than Ramos, as C.M.'s sole managing
conservator. Therefore, we affirm that portion of the trial court's judgment with
regard to conservatorship.

B. Appellant as Possessory Conservator

 At trial, appellant's attorney argued for appellant to be named possessory
conservator of C.M., which the trial court denied. Appellant now asks this court to
appoint her possessory conservator in light of our reversal of that portion of the trial
court's judgment terminating her parental rights. However, appellant's statement of
appellate points did not include a statement of her intent to appeal the trial court's
refusal to appoint her possessory conservator. 

 According to Texas Family Code section 263.405(I), "[t]he appellate court may
not consider any issue that was not specifically presented to the trial court in a timely
filed statement of the points on which the party intends to appeal or in a statement
combined with a motion for new trial." Tex. Fam. Code Ann. § 263.405(i) (Vernon
2008). Because appellant did not include the trial court's refusal to appoint her
possessory conservator in her statement of appellate points or in any other statement
combined with a motion for a new trial, we may not consider whether the trial court's
refusal to appoint appellant as possessory conservator was proper. (3) See In re G.B.,
264 S.W.3d 742, 742 (Tex. 2008); Bermea v. Tex. Dep't. of Family & Protective
Servs., 265 S.W.3d 34, 38 (Tex. App.--Houston 2008, pet. denied); Pool v. Tex.
Dep't. of Family & Protective Servs., 227 S.W.3d 212, 215 (Tex. App.--Houston [1st
Dist.] 2007, no pet.). Conclusion



 For the foregoing reasons, we reverse that portion of trial court's judgment
terminating appellant's parental rights and affirm the portion of the judgment of the
trial court with regard to conservatorship of C.M.






 Sherry Radack

 Chief Justice



Panel consists of Chief Justice Radack and Justices Jim Sharp and Taft. (4)


1. The court terminated the parental rights of the father of both A.S. and C.M., and the
father has not appealed.
2. C.M.'s paternal grandmother stated that she would like for C.M. to be placed
with her, but acknowledged that she did not have the financial ability to care
for both children. She requested that C.M. be placed with Ms. Ramos instead
of herself. 
3. We take notice of the recent decision by the Fort Worth Court of Appeals declaring
Texas Family Code § 263.405(I) unconstitutional on the ground that it violates the
Separation of Powers Clause of the Texas Constitution. In re D.W., 249 S.W.3d 625,
640 (Tex. App.--Fort Worth 2008, pet. denied). The Supreme Court denied review,
explicitly stating that it expressed no opinion as to the constitutionality or
unconstitutionality of the statute. In re D.W., 260 S.W.3d 462, 462 (Tex. 2008). In the
instant case, appellant has not asked us to review the constitutionality of section
263.405(I). 
4. The Honorable Tim Taft, retired justice, Court of Appeals for the First District of
Texas, participating by assignment.