Malcolm Troy EARVIN, Appellant,

v.

DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
Appellee.

No. 01–05–00752–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 15, 2007.

Gary Michael Polland, Polland & Associates, Houston, for appellant.

Sandra D. Hachem, Senior Assistant County Attorney, Houston, for appellee.

Panel consists of Justices JENNINGS, HANKS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Following a bench trial, the trial court terminated the parental rights of Malcolm Troy Earvin, appellant, to his minor child, S.M.E., a/k/a S.S.M. In four points of error, Earvin argues that (1) the evidence is legally insufficient to support the trial court's decision to terminate his parental rights; (2) the evidence is factually insufficient to support the trial court's decision to terminate his parental rights; (3) his due process rights under the Fourteenth Amendment to the United States Constitution were violated by the court's termination of his parental rights; and (4) the court erred in naming appellee, the Department of Family and Protective Services (the Department), the sole managing conservator of S.M.E.

We affirm in part, and reverse and render in part.

## Background

Earvin is the father of S.M.E. Earvin was dating S.M.E.'s mother at the time S.M.E. was conceived, but when Earvin learned of the mother's drug use, he broke up with her. S.M.E. was born with cocaine in her system in December 2003. After birth, both S.M.E. and the mother were transferred to a drug abuse treatment center. During this time, Earvin visited S.M.E., and brought her clothes, food, milk, and other things. During weekend releases, S.M.E. and her mother would stay with Earvin. Once the two were permanently released from the treatment center, Earvin was not able to get in contact with them and did not know where they were.

In March of 2004, Earvin sustained a severe injury to his leg, causing him much pain, limiting his mobility, and requiring substantial physical therapy. During this time, Earvin was unable to work. Three weeks before the trial, Earvin started working again.

In August of 2004, the Department found the mother and S.M.E. living in squalid conditions. The mother was using drugs again. The Department obtained temporary custody of S.M.E. Earvin was notified, and he attended the show cause hearing.

At the hearing, the court ordered Earvin to comply with all service plans developed by the Department in order to regain custody of S.M.E. Earvin failed to comply with almost all of the requirements in the Department's service plans. At the trial to terminate parental rights, the trial court ordered that Earvin's parental rights be terminated based on subsections 161.001(1)(D), (E), and (N) of the Family Code.

### Legal Sufficiency

In his first point of error, Earvin argues that the evidence is legally insufficient to support the trial court's termination of his parental rights.

### A. Standard of Review

The burden of proof at trial in parental-termination cases is by clear and convincing evidence. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2006); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex.2002). Section 161.001 of the Texas Family Code provides the method by which a court may involuntarily terminate the parent-child relationship. TEX. FAM.CODE ANN. § 161.001. Under this section, a court may order the termination of the parent-child relationship if the court finds, by clear and convincing evidence, that (1) one or more of the acts enumerated in subsection 161.001(1) was committed and (2) termination is in the best interest of the child. *Id.* "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations

sought to be established. TEX. FAM.CODE. ANN. § 101.007 (Vernon 2002); *J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review.

When determining legal sufficiency, we review all the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* This does not mean that we must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* Therefore, in conducting a legal-sufficiency review in a parental-termination case, we must consider all of the evidence, not only that which favors the verdict. *See City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex.2005).

The natural rights that exist between parents and their children are of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985). Therefore, termination proceedings should be strictly scrutinized, and the involuntary termination statutes should be strictly construed in favor of the parent. *Id.* at 20–21. However, "[j]ust as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex.2002).

**348**

### B. Knowingly Allowing the Child to Remain in Dangerous Conditions and Endangering the Child: Sections 161.001(1)(D), (E)

■ The Department does not argue that the evidence is legally and factually sufficient to support a determination that Earvin had violated subsections 161.001(D) or (E). Nor do we find that such a determination is possible. To support a ruling to terminate parental rights based on subsection 161.001(1)(D), the Department was required to prove that Earvin "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *See* TEX. FAM. CODE ANN. § 161.001(1)(D). To support a ruling to terminate parental rights based on subsection 161.001(1)(E), the Department was required to prove that Earvin "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See id.* § 161.001(1)(E).

Earvin testified without contradiction that while S.M.E. and her mother were in the drug abuse treatment center, he brought S.M.E. clothes, food, and milk. On the weekends that S.M.E. and her mother were released from the treatment center, they would stay with Earvin at Earvin's mother's home. Earvin stated that after S.M.E. and her mother were released from the treatment center, the mother disappeared and he did not know where she and S.M.E. were.

The Department argues that Earvin lost contact with S.M.E. and her mother when they left the treatment center and it shows that "he was well aware his child was in a precarious situation on the streets with a mother who had drug problems, yet he took no action to protect that child." This is not a proper characterization of the evidence, however. Earvin testified that when the mother left the treatment center, he could not get in contact with her or S.M.E. because he did not know where they were. When he finally tracked them down, S.M.E. was already in the custody of the Department. None of this evidence suggests that Earvin took no action to protect S.M.E., that Earvin endangered the child, or that he knowingly allowed the child to be endangered. There is no other evidence in the record to establish that Earvin knowingly endangered S.M.E. or knowingly allowed her to be endangered.

### C. Constructive Abandonment: Section 161.001(1)(N)

■ To support a ruling to terminate parental rights based on subsection 161.001(1)(N), the Department was required to prove that (1) the child has been under the conservatorship of the Department for not less than six months; (2) the Department has made reasonable efforts to return the child to the parent; (3) the parent has not regularly visited or maintained significant contact with the child; and (4) the parent has demonstrated an inability to provide the child with a safe environment. *Id.* § 161.001(1)(N). While we agree with the Department that the first three elements of constructive abandonment have been met, we do not agree that the Department met its burden on the fourth element.

As proof that it met its burden on the fourth element, the Department points to the following facts: (1) Earvin knew S.M.E.'s mother was on drugs while she was pregnant with S.M.E.; (2) Earvin did not attempt to take custody of S.M.E. while she and the mother were in the drug abuse treatment center; (3) Earvin "likely" had little interaction with S.M.E. after his severe leg injury; (4) Earvin took no action after determining that S.M.E. and

her mother were "out on the street"; and (5) Earvin made little effort to visit the child.

The fifth fact goes to the third element of constructive abandonment, and it does not show, as the statute requires, that Earvin has demonstrated an *inability* to provide the child with a safe environment. The third and fourth facts are based on speculation. Earvin testified that while the child was in the hospital and the treatment center, he visited her regularly and brought her clothes, food, and milk, and that on the weekends, when the two were released from the treatment center, they would stay with Earvin. Once S.M.E. and her mother were permanently released from the treatment center, Earvin testified that he could not contact them and did not know where they were. None of this establishes that he purposefully had little interaction with S.M.E. or that he took no action after they left the treatment center.

The first and second facts are similarly unconvincing. The Department cites no authority that a parent has an obligation to attempt to take custody of a child when the mother is in a treatment center and subsequently released. Nothing in the record indicates that Earvin was aware of the severity of the mother's drug use or knew or should have known that the mother would resume drug use after being released from the treatment center.

What the record does show, however, is that Earvin cared for S.M.E. while the mother was in the hospital and the treatment center, that Earvin had access to a home to provide for S.M.E., and that he had obtained a job three weeks before trial. Even if the trial court, as the trier of fact, chose to disbelieve Earvin's testimony as not credible, this does not prove

that the opposite is true. *See Lozano v. Lozano,* 52 S.W.3d 141, 150 (Tex.2001); *Am. Indus. Life Ins. Co. v. Ruvalcaba,* 64 S.W.3d 126, 143 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

## D. Failure to Comply with a Court Order

■ In its brief, the Department argues that we can affirm based on subsection 161.001(1)(O), a ground not listed in the decree. We, however, are restricted to reviewing the sufficiency of the evidence presented under the specific statutory grounds found by the trial court in its termination decree. *See Cervantes–Peterson v. Dep't of Family & Protective Servs.,* 221 S.W.3d 244, 252 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Thus, we do not consider whether or to what extent Earvin failed to comply with the court ordered service plan.

We hold that the evidence is legally insufficient to support a ruling that Earvin violated subsections 161.001(1)(D), (E), and (N) as found in the decree. We sustain Earvin's first point of error.[1]

Our reversal of the portion of the trial court's judgment denying Earvin's parental rights, in effect, results in a denial of the portion of the Department's petition seeking termination of Earvin's parental rights. Under Section 161.205 of the Family Code, if the court does not order termination of the parent-child relationship, the court shall (1) deny the petition for termination or (2) render any order in the best interest of the child. *See* Tex. Fam.Code Ann. § 161.205 (Vernon 2002). Furthermore, section 263.404 of the Family Code allows the court to appoint the Department as managing conservator of a child

1. Because Earvin's first point of error disposes of his second and third points of error, we

need not reach them.

without terminating parental rights if the court finds that appointing the parent or a relative would not be in the best interest of the child. *See id.* § 263.404 (Vernon 2002).

In contrast to the facts presented in recent decisions of this Court, in which we remanded the case to the trial court, the trial court here made the required best-interest findings to support the appointment of the Department as sole managing conservator of S.M.E. *Cf. Colbert v. Dep't of Family & Protective Servs.,* 227 S.W.3d 799, 815, (Tex.App.-Houston [1st Dist.] 2006, no pet.) (trial court made no findings to support appointment of DFPS as conservator); *Walker v. Dept. of Fam. and Protective Servs.* No. 01–06–00253–CV, —— S.W.3d ——, ——, 2006 WL 3751456, at *3 (Tex.App.-Houston [1st Dist.] Dec. 21, 2006, no pet.) (trial court appointed DFPS as managing conservator without findings to support appointment). Because the trial court has already effectively satisfied the requirements of sections 161.205 and 263.404 of the Family Code, we need not remand this case to the trial court to render an order based on the best interest of the child. Therefore, we reverse and render judgment denying the Department's petition for termination of Earvin's parental rights.

### Naming the Department the Sole Managing Conservator

In his fourth point of error, Earvin argues that the evidence is insufficient to support the court's appointment of the Department as the sole managing conservator of S.M.E.

### A. Standard of Review

■ We give wide latitude to a trial court's decision on custody, control, possession, and visitation matters. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex. 1982); *Turner v. Turner,* 47 S.W.3d 761,

763 (Tex.App.-Houston [1st Dist.] 2001, no pet.). We will reverse the trial court's order regarding custody, control, possession and visitation only if it appears from the record as a whole that the trial court abused its discretion. *Gillespie,* 644 S.W.2d at 451. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). We view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ. denied).

### B. Analysis

■ Earvin argues that because the evidence is insufficient to terminate his parental rights, "it follows that it was not in the child's best interest that the Department be appointed sole managing conservator of" R.K.G. and S.M.E. We do not agree, however, that reversal of a termination of parental rights requires a reversal of the appointment of the Department as the sole managing conservator.

In its Second Amended Petition, not only did the Department request that the trial court terminate appellant's rights under Chapter 161 of the Family Code, the Department also petitioned the court, pursuant to sections 153.005, 153.131 and 263.404 of the Family Code, to appoint the Department as the sole managing conservator of R.K.G. and S.M.E., alleging that appointment of the parent would not be in the best interest of the child. The court found that appointment of Earvin would not be in the best interest of S.M.E. "because the appointment would significantly impair the [child's] physical health or emotional development" and appointed the Department as sole managing conservator.

Thus, appointment of the Department as conservator was independent of the termination of Earvin's parental rights. Accordingly, appointment of the Department as the sole managing conservator requires independent analysis.

While there was not clear and convincing evidence to support a determination that Earvin knowingly placed or allowed the child to remain in conditions that would endanger the physical or emotional well-being of the child or demonstrated an *inability* to provide S.M.E. with a safe environment, there was sufficient evidence that Earvin was *not willing* to provide S.M.E. with an environment that was in the best interest of the child.

According to the court-ordered service plan established by the Department, Earvin was required to attend parenting training courses, submit to random drug tests, and participate in counseling. The record reflects that Earvin did not attend parenting classes or participate in counseling. He submitted to only one drug test. Additionally, in the time that S.M.E. was under temporary conservatorship of the Department, Earvin visited her only once.

His explanations for his inaction were that (1) the Department never told him where he could receive drug evaluations and psychological evaluations, although he testified that the Department did tell him where he could take parenting classes; (2) he had to care for his sick mother; and (3) he severely injured his leg in March of 2004. Earvin testified that his mother had a mild heart attack and was in the hospital from February 2005 to June 2005 and that he had to care for her during this time. Earvin sustained a severe injury to his leg in March of 2004. Subsequently, he had to attend physical therapy two to three times a week. Earvin was able to get friends to take him to and from the physical therapy.

The one time Earvin visited S.M.E. was in December 2004. Another visitation was arranged in February 2005. Earvin cancelled that meeting because his mother was unable to attend and he had wanted her to come along. Earvin testified that he wanted to reschedule the visitation but that he "never did get around to it."

According to Earvin's own testimony, he was able to care for his mother in the hospital and attend physical therapy for his leg, but was unable to schedule and attend drug evaluations, psychological evaluations, parenting classes, or visitations with his daughter. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). It was entirely within the trial court's discretion to determine that Earvin was not willing to provide an environment conducive to his daughter's physical health and emotional development and that appointment of the Department as sole managing conservator was in the best interest of the child.

Viewing all the evidence in a light most favorable to the trial court's decision, we cannot say that the trial court's judgment was arbitrary or unreasonable. Accordingly, we hold that the trial court did not abuse its discretion in appointing the Department as the sole managing conservator of S.M.E.

We overrule Earvin's fourth point of error.

## CONCLUSION

We affirm the portion of the decree assigning the Department as the sole managing conservator of S.M.E. *See* TEX. FAM. CODE ANN. § 263.404. We reverse the portions of the decree related to the termination of Earvin's parental rights and ren-

der judgment denying the Department's petition for termination of Earvin's parental rights. *See id.* § 161.205.

JENNINGS, Justice, concurring.

TERRY JENNINGS, Justice, concurring.

I concur in the judgment of this Court and join the majority in its opinion to the extent that it sustains the first issue of appellant, Malcolm Troy Earvin, and overrules his fourth issue. I agree that we should affirm the portion of the trial court's decree assigning the Texas Department of Family and Protective Services ("DFPS") as the sole managing conservator of Earvin's child and that we should render judgment that Earvin's parental rights are not terminated. However, the majority erroneously reasons that a rendition, instead of a remand, is proper "[b]ecause the trial court has already effectively satisfied the requirements of sections 161.205 and 263.404 of the Family Code." *See* TEX. FAM.CODE ANN. §§ 161.205, 263.404 (Vernon 2002).

In fact, this case serves to illustrate how this Court has previously erred in remanding parental rights termination cases, after sustaining the parents' challenge of the legal sufficiency of the evidence supporting termination, in order to address the separate issue of conservatorship on unassigned error. *See Colbert v. Dep't of Family & Protective Servs.,* 227 S.W.3d 799 (Tex.App.-Houston [1st Dist.] 2006, no pet. h.); *Walker v. Dep't of Family & Protective Servs.,* No. 01–06–00253–CV, — S.W.3d ——, 2006 WL 3751456 (Tex.App.-Houston [1st Dist.] Dec. 21, 2006, no pet. h.).

In a suit to terminate the parent-child relationship, section 161.205 provides that "[i]f the [trial] court *does not order* termination of the parent-child relationship, the court shall" deny the petition or render any order in the best interest of the child. TEX. FAM.CODE ANN. § 161.205 (emphasis added). In regard to the review of the placement of children under the care of DFPS, section 263.404 provides that a trial court "may render a final order appointing the department as managing conservator of the child *without terminating* the rights of the parent" if the court finds that appointment of a parent as managing conservator would not be in the child's best interest because the appointment would significantly impair the child's physical health or emotional development and it would not be in the child's best interest to appoint a relative or another person. *Id.* § 263.404(a) (emphasis added). Here, however, the trial court actually ordered the termination of Earvin's parental rights to his child. Sections 161.205 and 263.404 are simply inapplicable to this appeal.

In addition to seeking the termination of Earvin's parental rights to his child in its petition, DFPS requested that the trial court appoint DFPS as sole managing conservator pursuant to sections 153.005 and 263.404 of the Texas Family Code. *See id.* §§ 153.005, 263.404 (Vernon 2002). As noted above, section 263.404 is not applicable here. Section 153.005 provides that in a suit affecting the parent-child relationship, a court "may appoint a sole managing conservator or may appoint joint managing conservators." *Id.* § 153.005(a). A finding by the court that appointment of a parent as managing conservator would not be in the child's best interest because the appointment would significantly impair the child's physical health or emotional development defeats the presumption that a parent should be appointed as managing conservator. *Id.* § 153.131 (Vernon 2002). Here, the trial court ordered the termination of Earvin's parental rights to his child. It also appointed DFPS as the sole managing conservator of the child, finding

"this appointment to be in the best interest of the child" and granting DFPS specific rights and duties, including those rights and duties afforded to a nonparent appointed as a sole managing conservator under section 153.371 of the Texas Family Code. *Id.* § 153.371 (Vernon Supp.2006). As acknowledged by the majority, the trial court appointed DFPS as conservator "independent of the termination of Earvin's parental rights." This independent determination was not made under either section 161.205 or 263.404.

Earvin, in his issues for our review, has separately challenged the trial court's order terminating his parental rights to his child and the trial court's order appointing DFPS as sole managing conservator of the child. We have sustained his challenge to the legal sufficiency of the evidence supporting the termination of his parental rights, and we have overruled his challenge of the trial court's order appointing DFPS as sole managing conservator of the child.

Rendition is not proper in this case "[b]ecause the trial court has already effectively satisfied the requirements of sections 161.205 and 263.404 of the Family Code." Sections 161.205 and 263.404 are not at all applicable to this case. Rather, we should render judgment that Earvin's parental rights to his child are not terminated because that is the judgment that the trial court should have rendered. *See* Tex.R.App. P. 43.2(a), (c) (A court of appeals may "affirm the trial court's judgment in whole or in part" or "reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered.").