**Opinion issued October 25, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-10-00930-CV

————————————————

**F.A.B., Appellant**

**V.**

**DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee**

---

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Case No. 2005-33607**

---

## MEMORANDUM OPINION

This is an accelerated appeal from a judgment signed on September 23, 2010, removing appellant F.A.B. as managing conservator of two of her minor children, C.M. and D.Y., and naming the Department of Family and Protective Services their permanent sole managing conservator. In seven points of error,

F.A.B. contends that the trial court erred in granting DFPS sole permanent managing conservatorship. She argues the appointment is not in the children's best interest and there was no evidence that the change was a positive improvement for the children or that there was a continuing danger to the physical health or safety of the children if returned to F.A.B. She also contends that the trial court erred in granting DFPS emergency temporary possession of the children and in ordering drug testing throughout the pendency of this suit. We affirm.

## Background

On June 25, 2009, F.A.B.'s two minor children, C.M. and D.Y., were removed from her home after DFPS discovered the children in unsuitable living conditions during an attempted home visit. DFPS initially sought termination of F.A.B.'s parental rights as to C.M. and D.Y., modification of conservatorship with respect to C.M., and appointment of DFPS as sole managing conservator of C.M. and D.Y.[1] By order dated July 16, 2009, the trial court appointed DFPS temporary sole managing conservator. DFPS subsequently nonsuited its termination claim and pursued only its request to be appointed sole managing conservator. After a

---

[1]  DFPS sought modification of conservatorship with respect to C.M. because there was a prior order entered September 6, 2005, which established the parent-child relationship between F.A.B. and C.M. and appointed F.A.B., along with C.M.'s father, as joint managing conservators. There is no similar order establishing the parent-child relationship between F.A.B. and D.Y.

2

bench trial, on September 23, 2010, the trial court entered an order appointing DFPS as such. This appeal followed.

## Discussion

### A. Conservatorship of the Children

In her first, second, and sixth points of error, F.A.B. contends that the trial court erred in appointing DFPS as sole managing conservator because: (1) DFPS did not properly care for the children and its appointment created a harmful situation for them; (2) DFPS's appointment was not a positive improvement for the children; and (3) there was no evidence of a continuing danger to the physical health or safety of the children if returned to F.A.B. F.A.B. cites no authority for her arguments, but we construe these three points on appeal as a challenge to the sufficiency of the evidence to support the trial court's finding that it was in the children's best interest to appoint DFPS, and not F.A.B. or another relative, as the sole managing conservator of C.M. and D.Y.

#### 1. Standard of Review

The standard of review for the appointment of a non-parent as sole managing conservator is less stringent than the standard of review for termination of parental rights. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Unlike the standard of proof for termination of parental rights, the findings necessary to appoint a non-parent as sole managing conservator need only be established by a

preponderance of the evidence. *Id.* Moreover, we review a trial court's appointment of a non-parent as sole managing conservator for abuse of discretion. *Id.* (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982)). Therefore, we will reverse the trial court's appointment of a non-parent as sole managing conservator only if we determine that it is arbitrary or unreasonable. *Id.* We view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *Earvin v. Dep't of Family and Protective Servs.*, 229 S.W.3d 345, 350 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied)).

### 2.    Applicable Law

The primary consideration in determining issues of conservatorship and possession of and access to the child is always the child's best interest. TEX. FAM. CODE ANN. § 153.002 (West 2008). Section 153.005 of the Family Code authorizes the appointment of a managing conservator, and provides that the managing conservator must be "a parent, a competent adult, an authorized agency, or a licensed child-placing agency." *Id.* § 153.005(b) (West 2008). The Family Code creates a rebuttable presumption that it is in a child's best interest for his or her parents to be named joint managing conservators. *Id.* § 153.131(b) (West 2008). In order to rebut this presumption and appoint someone other than a parent

4

as sole managing conservator of the child, a court must find that appointment of a parent would "significantly impair the child's physical health or emotional development." *Id.* § 153.131(a) (West 2008); *In re J.A.J.*, 243 S.W.3d at 616.

Section 263.404 of the Family Code allows the trial court to render a final order appointing DFPS as the child's managing conservator without terminating parental rights if the court finds that: (1) a parent's appointment would not be in the child's best interest because the appointment would significantly impair the child's physical health or emotional development; and (2) appointment of a relative of the child or another person would not be in the child's best interest. TEX. FAM. CODE ANN. § 263.404(a) (West 2009). In deciding whether to appoint DFPS without terminating the parents' rights, the trial court must take the following factors into consideration:

(1) that the child will reach 18 years of age in not less than three years;

(2) that the child is 12 years of age or older and has expressed a strong desire against termination or being adopted;

(3) that the child has special medical or behavioral needs that make adoption of the child unlikely; and

(4) the needs and desires of the child.

*Id.* § 263.404(b) (West 2009).

Finally, when considering the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the

5

child's best interest." *Id.* § 263.307(a) (West 2009). The court should consider the following factors when determining the child's best interest and whether the child's parents are willing and able to provide the child with a safe environment:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

6

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

*Id.* § 263.307(b) (West 2009).

### 3.   Analysis

The trial court made several written findings in its final order entered September 23, 2010, that track the language of the relevant statutes.  It found (1) the circumstances have materially and substantially changed since the rendition of the 2005 order establishing the parent-child relationship between F.A.B. and C.M. such that the appointment of DFPS as sole managing conservator would be a positive improvement for C.M.;[2] (2) the appointment of F.A.B. as managing

---

[2]   F.A.B. does not argue on appeal that the trial court erred in finding the circumstances have materially and substantially changed since the rendition of the

7

conservator of C.M. and D.Y. would not be in the children's best interest because the appointment would significantly impair the children's physical health or emotional development; (3) appointment of a relative or another person as managing conservator would not be in the children's best interest; and (4) the appointment of DFPS as C.M. and D.Y.'s sole managing conservator was in the children's best interest.

We conclude the evidence is sufficient to support the court's determination that it was in the children's best interest to appoint DFPS, and not F.A.B. or another relative, as sole managing conservator. First, the record contains evidence of substance abuse by the family, namely F.A.B. *See* TEX. FAM. CODE ANN. § 263.307(b)(8). On the first day of trial, F.A.B. had difficulty walking in the courtroom and keeping her eyes open while on the witness stand. During cross-examination, she explained that she was having cramps in her leg and was tired because she had not slept the night before. When counsel for DFPS asked whether she was taking any medications, she responded that she was. The record reflects that F.A.B. spent the next five minutes searching through her purse for medication and that she eventually produced eight prescription bottles from her purse. Included in her assortment of medications were prescriptions for Soma (a muscle

2005 order establishing the parent-child relationship between F.A.B. and C.M. Accordingly, we do not address whether the evidence is sufficient to support the trial court's finding on this issue.

relaxer), Lorcet (for pain—Hydrocodone), Gabapentin (for bipolar disorder), and Xanax (for anxiety). Several of the prescriptions, each containing between seventy and 100 pills per prescription, had been filled six days earlier, but each prescription only had a few pills left in the bottle. When asked about the missing pills, she explained that she kept the other pills either at her house or her father's house. When asked by DFPS's counsel if she was in shape to take her children home with her that day, she did not give a direct response to the question. Instead, she said that she needed to go home and sleep. The trial court was concerned that F.A.B. was "not being totally forthcoming and alert" and, at DFPS's request, ordered a drug test.

On the final day of the trial, F.A.B. again appeared incoherent, as evidenced by her eyes drooping. She was observed putting her head down on the table during another witness's testimony. She explained that she was tired and not feeling well. Finally, after counsel asked her how much sleep she had the night before, she became confused as to what day it was, thinking she had been to court the previous day when she had not.

Derrick Goodwill, a physician assistant at Spring Wellness Center, a pain management clinic, testified that F.A.B. is currently a patient at that clinic and has been since 2008. Goodwill testified that F.A.B. is currently prescribed Soma, Gabapentin, Xanax, Lorcet, and Paxil. He explained that Soma, Xanax, and Lorcet

9

can all cause drowsiness, but that he had never seen F.A.B. appear to be overly medicated at the clinic. He did acknowledge that if she was exhibiting symptoms of unstableness, slurred speech, droopy eyes, and apparent loss of consciousness, those symptoms would be consistent with the abuse of those particular drugs.

Bruce Jeffries, who performs drug and DNA testing, testified that his lab conducted the drug testing ordered on F.A.B. during the trial. He testified that her drug tests performed during trial came back negative. However, he explained that the type of drug test ordered on the first day of trial would not detect Soma or Hydrocodone. He further explained that, in his experience, if a person was overmedicated on Soma or Hydrocodone, they would appear drowsy, sleepy, and somewhat incoherent.[3]

Second, the record contains evidence that F.A.B.'s mental illness threatens her ability to care for her children. *See* TEX. FAM. CODE ANN. § 263.307(b)(6), (12). Paul Damin, a psychologist who conducted a psychological evaluation of F.A.B., testified that F.A.B has a diagnosis of chronic and fairly severe mental

---

[3] In addition to the evidence introduced during trial concerning F.A.B.'s possible drug abuse, the record reflects F.A.B. was charged with possession of a controlled substance with intent to deliver, when C.M. was about six years old. According to F.A.B., she was arrested on drug charges because a person who was living with her at the time was selling drugs out of her home without her knowledge. However, F.A.B. pleaded guilty and the trial court entered an order of deferred adjudication and placed her on community supervision for two years. As a result, a DFPS case was opened and C.M. and F.A.B.'s oldest child, who is not a party to this suit, were removed from her home. The children were returned to F.A.B. a few months later.

illness and bipolar disorder. According to Damin, F.A.B. was experiencing marked distress and severe impairment in functioning, was agitated, irritable, and prone to have extreme mood swings. He testified that F.A.B.'s level of distress created a risk that she would abuse her children. He also explained that F.A.B. expressed difficulties in her relationships with others and with her family that would interfere with her ability to obtain familial support. Based on his assessment, he concluded that her parenting issues presented a risk to the safety and welfare of her children and that her medication did not seem to be controlling her bipolar disorder.

Tabitha Lopez, a CASA volunteer and guardian ad litem appointed in this case, testified that she did not believe that it was in the children's best interest to return to F.A.B.'s care at that time. She testified that she was concerned about F.A.B.'s irrational, irate, and unstable behavior. She had observed several instances in which F.A.B. was acting inappropriately during the visits with her children. For example, at one visit, Lopez explained that F.A.B. became irate after the visit was cut short when she spanked D.Y. for hitting her in the face. She also explained that F.A.B. was incredibly difficult to deal with because she would become angry and irrational in every conversation.

Keisha Moses, a caseworker with DFPS, explained that F.A.B. has not attended all the recommended classes and has not obtained the required psychiatric

evaluation. She expressed concern about F.A.B.'s drug use and did not feel it was in the best interest of the children to be reunited with F.A.B. because they do not know where she is with her therapy and management of her medications. However, Moses acknowledged that C.M. expressed a desire to return home to live with her mother.

Third, the record reveals a history of abusive or assaultive conduct by the family or others who had access to the home. *See* TEX. FAM. CODE ANN. § 263.307(b)(7). On May 25, 2008, F.A.B. was assaulted by E.Y., D.Y.'s father, while she was pregnant with D.Y. According to the probable cause affidavit filed in E.Y.'s case, F.A.B. reported that E.Y. became angry with her and struck her in the face with his fists and a metal rod. She began bleeding profusely and to feel dizzy. She asked her daughter, C.M., who was six at the time, to get help, and police were called to the scene. Charges were filed against E.Y. for aggravated assault on a family member, but F.A.B. asked that the charges be dropped. According to her testimony, she was injured when she was hit with a telephone after E.Y tripped over the telephone cord. E.Y. pleaded guilty to a reduced charge of misdemeanor assault on a family member and was sentenced to six months' imprisonment.

Finally, the record contains evidence of the nature of the children's current out-of-home placement from which the trial court could conclude that remaining in

12

their current placement was in their best interest. *See* TEX. FAM. CODE ANN. § 263.307(b)(2). F.A.B. testified that D.Y. has appeared at several visits with unexplained cuts and bruises, that both children consistently had mosquito bites on their arms and legs, and that C.M. is allergic to mosquito bites. She opined that the children received these injuries as a result of the caretakers' neglect. But, one of the children's current caregivers testified that D.Y., who at the time of trial was almost two, was an active child who occasionally gets bumps and bruises. He explained that C.M. was once stung by a wasp but that he applied a gel to her sting and to both children's mosquito bites. He also noted that the children have adapted well in foster care and are doing well in school. Tabitha Lopez also testified that the children seem to get along very well with their caregivers and appear to be bonded to them.

In short, although F.A.B. presented explanations for her demeanor during trial, her drug conviction, E.Y.'s assault conviction, and her interactions with DFPS, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Earvin*, 229 S.W.3d at 351. After considering the evidence in a light most favorable to the judgment, we conclude the evidence is legally sufficient to support the trial court's findings and judgment. *Id.* And after considering all of the evidence, we conclude the evidence is factually sufficient to support the judgment. *See Mann v. Dep't of Family and Protective*

13

*Servs.*, No. 01-08-01004-CV, 2009 WL 2961396, at *15 (Tex. App.—Houston [1st Dist.] Sept. 17, 2009, no pet.). We therefore hold that trial court did not abuse its discretion in appointing DFPS sole managing conservator. *See Earvin*, 229 S.W.3d at 351 (affirming appointment of DFPS as managing conservator after concluding father was not willing to provide his child with environment that was in her best interest based on his failure to schedule and attend drug evaluations, psychological evaluations, parenting classes, and visitations with his daughter); *Corrales v. Dep't of Family & Protective Servs.*, 155 S.W.3d 478, 489–91 (Tex. App.—El Paso 2004, no pet.) (affirming jury's determination that it was in child's best interest to appoint DFPS as managing conservator where there was evidence of history of abusive physical conduct and substance abuse, lack of proper parenting skills, and vulnerability of the children); *In re R.W.*, No. 01-11-00023-CV, 2011 WL 2436541, at *14 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (affirming trial court's appointment of DFPS as conservator where there was evidence that children were removed because of mother's neglect; that mother disregarded services offered by DFPS; that mother lacked independent means of support; and that mother refused to submit to random drug tests).

We overrule F.A.B.'s first, second, and sixth issues.

14

**B.      Challenge to Temporary Orders**

In her third issue, F.A.B. maintains that the trial court erred in granting DFPS emergency possession of C.M. and D.Y. when there was no court order, parental consent, or exigent circumstances requiring the removal of the children. On June 26, 2009, the day after the children were removed, the trial court entered an order of protection appointing DFPS as the emergency temporary sole managing conservator of the children. Following an adversary hearing, the trial court entered another order, on July 16, 2009, appointing DFPS as the temporary sole managing conservator of the children. Since then, the trial court has entered a final order appointing DFPS the permanent sole managing conservator of C.M. and D.Y. Because a final order has been entered in this case, F.A.B.'s challenge to the temporary orders is moot. *See L.F. v. Dep't of Family & Protective Servs.*, No. 01-10-01148-CV, 2012 WL 1564547, at *14 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. denied) (citing *Rafferty v. Finstat*, 903 S.W.3d 374, 378 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ("In general, temporary orders of a trial court issued during the pendency of a proceeding are superseded by the trial court's final order.")).

We overrule F.A.B.'s third issue.

## C. Other Challenges

In her fourth, fifth, and seventh issues, F.A.B. contends that the Humble Police Department and DFPS employees violated her constitutional rights when they removed her children and that she has been subjected to drug testing throughout the pendency of the suit for the sole purpose of harassment. In order to preserve a complaint for appellate review, the record must show that a "complaint was made to the trial court by timely request, objection, or motion." TEX. R. APP. P. 33.1(a). Additionally, it is the burden of the appellant to bring forward a sufficient record to show the error committed by the trial court. *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The record does not reflect that F.A.B. properly raised and obtained a ruling on her constitutional complaints in the trial court. Likewise, F.A.B. failed to object to the drug testing ordered by the trial court during the trial. We hold that F.A.B. has failed to preserve her fourth, fifth, and seventh issues for review. *See* TEX. R. APP. P. 33.1(a); *Nicholson*, 226 S.W.3d at 583.

We therefore do not address F.A.B.'s fourth, fifth, and seventh issues.

16

## Conclusion

We conclude that the trial court did not abuse its discretion in appointing DFPS as the sole managing conservator of C.M. and D.Y. and that the remaining issues raised by F.A.B. in this appeal are either moot or not properly presented for appellate review. Accordingly, we affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.