# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-12-00670-CV

---

**J. C., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-FM-11-004498, HONORABLE PAUL DAVIS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

J.C. appeals the trial court's final decree appointing appellee the Texas Department of Family and Protective Services as the non-parent sole managing conservator of his children, K.C. and J.C., Jr., following a jury trial.[1] The Department sought to terminate J.C.'s parental rights to his children and, in the alternative, to be appointed the managing conservator. The jury made findings in favor of the Department as to the statutory grounds for termination and found that the Department should be appointed the children's managing conservator but also found that it was not in the children's best interest for J.C.'s parental rights to be terminated. In its final decree, the trial court rendered judgment on the jury's verdict, appointing the Department as the sole managing conservator but not terminating J.C.'s parental rights. *See* Tex. Fam. Code Ann. §§ 161.001 (West Supp. 2012),

---

[1] We use initials to refer to appellant and his children. *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2012); Tex. R. App. P. 9.8.

263.404 (West 2008). The trial court also found that the appointment of J.C. as possessory conservator was not in the children's best interest "at this time" and that parental possession or access "at this time" would endanger the children's physical or emotional welfare. *See id*. § 153.191 (West 2008). On appeal, J.C. challenges the findings by the jury and the trial court that were in favor of the Department. For the reasons that follow, we affirm the trial court's final decree.[2]

## BACKGROUND

J.C. was born in 1988. He was in foster care from age 13 to 18. While he was in foster care, he met the children's mother, and they became romantically involved. They had their first child, K.C., in December 2007, and their second child, J.C., Jr., in January 2009. J.C. and the mother ended their relationship when J.C., Jr., was approximately four months old.

Around the time that J.C.'s relationship with the mother ended, she was arrested for assaulting her roommate. After the arrest, J.C. cared for the children until June 4, 2010, when he was arrested for assault family violence and criminal mischief during an altercation with the mother. J.C. pleaded no contest to the offenses and remained in jail for approximately 15 days. He had previously been convicted of burglary of a habitation and placed on community supervision for five years in February 2007. After the June 2010 incident, the State filed a motion to revoke his community supervision and a warrant issued for his arrest. He was incarcerated at the end of June 2010, his community supervision was revoked in August 2010, and he was sentenced to three years' imprisonment.

---

[2] Although the decree is titled "Final Decree of Termination," J.C.'s parental rights were not terminated.

Within a few weeks of the June 4, 2010, incident, the Department filed an original petition seeking to terminate parental rights. The Department was appointed temporary managing conservator of the children and placed the children in foster care. The case was tried to the bench in April 2011.[3] J.C. remained incarcerated, but he testified that he thought that he would be paroled within a few months. A woman who knew J.C. when he was in foster care through her work as a case manager for Life Works testified that she was willing to care for the children until J.C. was ready for them.[4] Following the trial, the trial court dismissed the Department's petition against J.C. The trial court found that the Department "did not prove by clear and convincing evidence that [J.C.] committed any act under Texas Family Code section 161.001, *et seq.*, and that the termination of his rights to his two children . . . would not be in the best interest of the subject children."

After the bench trial, J.C. placed the children with the case manager from Life Works. For the next few months, the case manager took care of the children, and one of J.C.'s friends helped her with the children during the day. This friend took the children to visit J.C. in jail "twice a week" for "between three and five weeks." The foster mother who had taken care of the children during the pendency of the termination proceeding also stayed in contact with the children and kept them for overnight visits.

After a few months, the case manager was no longer willing to take care of the children and returned them to the Department's care. Shortly thereafter, the Department filed

---

[3] The children's mother's parental rights were terminated by agreement in an interlocutory decree which was incorporated into the final order and judgment in the April 2011 proceeding.

[4] The case manager testified that Life Works was a "nonprofit that helps young people who are in foster care."

another petition seeking to terminate J.C.'s parental rights, was appointed temporary managing conservator, and placed the children with the same foster mother from the prior termination proceeding. In an amended petition, the Department pleaded multiple statutory grounds for termination based upon appellant's conduct both before and after the initial termination proceeding was dismissed. *See* Tex. Fam. Code Ann. §§ 161.001(1), 161.004 (West 2008) (setting forth circumstances when a court may terminate parental rights after denial of prior petition to terminate). The Department alternatively sought to be appointed the children's sole managing conservator. *See id*. § 263.404.

The jury trial occurred in July 2012. The Department's witnesses included J.C., the case manager who had taken care of the children after the first proceeding, Child Protective Services (CPS) employees who were involved with J.C. and his children, the children's therapist, the foster mother, the court appointed special advocate (CASA) volunteer, and officers from the police department. The Department's evidence showed that J.C. had a history of drug abuse, criminal conduct, and family violence with the children's mother and that he was incarcerated and not scheduled to be released until April 2013. In addition to evidence that J.C. abused drugs prior to being incarcerated, he admitted that he smoked marijuana in March 2012 during his incarceration. He also admitted to numerous altercations with the children's mother that led to family violence. Although the evidence supported a finding that the mother was the instigator of these altercations, J.C. broke her arm during one of them.

The Department also presented evidence concerning its care and plans for the children. After the children were returned to the Department's care in 2011, the children were placed

4

with the foster mother who had taken care of the children during the prior termination proceeding. The Department's plan was for the foster mother to adopt the children. The foster mother, as well as others, testified about the children's placement with her. The evidence was undisputed that the children were bonded with the foster mother and doing well in her care and that she hoped to adopt them.

Witnesses who testified on J.C.'s behalf were a long-time friend, other employees of Life Works, J.C.'s friend who helped take care of the children during the time that they were in the case manager's care, and another friend who testified that she was willing to take care of the children going forward. J.C. presented evidence that showed that he was a hard worker, motivated and capable of being a good father, and loved and was bonded with his children. J.C. completed his GED, was employed before his incarceration, and had a job offer when he was released from prison. J.C. also completed services available to him for improving his parenting skills during his incarceration and a drug treatment program around the time K.C. was born. He took steps to stay in contact with his children despite being in prison, including sending cards and audiobooks.

J.C. presented evidence about his plans for his children's care. J.C. testified that he would be ready six months to one year after he was released from prison. His plan for the children until then was for them to stay with his friend who testified that she was willing to take care of the children going forward. She was a nurse who lived in Tyler, Texas, and had one child of her own. J.C. also had extended family in Tyler, Texas. His friend submitted a placement application with the Department in December 2011, asking for the children to be placed with her, but the home study

had not been completed at the time of trial. She knew both J.C. and the children's mother when they were in foster care, and she was a potential placement for another child of the mother.

The trial court submitted the case to the jury, and the jury made the following affirmative findings:

- After April 25, 2011, J.C. engaged in conduct or knowingly placed the children with a person who engaged in conduct that endangered the physical or emotional well-being of the children.

- After April 25, 2011, J.C. knowingly placed the children or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children.

- The circumstances of [the children] or J.C. had "materially and substantially changed since April 25, 2011."

- Before April 25, 2011, J.C. engaged in conduct or knowingly placed the children with a person who engaged in conduct that endangered the physical or emotional well-being of the children.

- J.C. "knowingly engaged in criminal conduct that resulted in [J.C.]'s conviction of an offense, and confinement or imprisonment and inability to care for the children . . . for not less than two years from June 29, 2010."

- The Department should be appointed the sole managing conservator of the children.

See Tex. Fam. Code Ann. §§ 161.001(1)(D), (E), (Q), .004. The jury, however, found:

- It was not in the children's best interest for J.C.'s parental rights to be terminated.

- Before April 25, 2011, J.C. did not knowingly place the children or knowingly allow the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children.

6

*See id*. § 161.001(1)(D), (2).

In accordance with the jury's findings, the trial court entered the final decree appointing the Department sole managing conservator. In the final decree, the trial court also found that "appointment of [J.C.] as possessory conservator was not in the children's best interest at this time" and that "parental possession or access at this time would endanger the physical or emotional welfare of the children." This appeal followed.

## ANALYSIS

J.C. raises five issues on appeal. He contends that (i) his issues challenging the jury's findings related to the statutory grounds for termination are not moot, (ii) this Court should strike the jury's findings relating to grounds for termination before April 25, 2011, as barred by *res judicata*, (iii) the evidence was legally and factually insufficient to satisfy the elements of section 161.001(1)(Q) in the prior termination proceeding or in this case, (iv) this Court should reverse the jury's findings relating to grounds for termination after April 25, 2011, based on the legal and factual insufficiency of the evidence and dismiss the petition, and (v) this Court should reverse the jury's appointment of the Department as the sole managing conservator based on the legal insufficiency of the evidence and dismiss the petition or, in the alternative, render judgment and appoint J.C. as possessory conservator with visitation and access to the children.

*Statutory Grounds For Termination*

In his second, third, and fourth issues, J.C. challenges the jury's affirmative findings as to the statutory grounds for termination. *See id*. § 161.001(1) (D), (E), (Q). The parties primarily

join issue as to the proper interpretation of section 161.004 and whether the jury properly considered evidence of J.C.'s actions prior to the bench trial in April 2011 as grounds for termination. *See id*. § 161.004.[5]

In his first issue, J.C. contends that his issues challenging the grounds for termination "are not moot because they satisfy section 161.004(a)(3) and therefore prejudice [his] parental rights." *See id*. § 161.004(a)(3). J.C. further argues that, even if the issues are moot, that they are subject to the "capable of repetition, yet evading review" exception to the mootness doctrine. *See In re Uresti*, 377 S.W.3d 696, 696 (Tex. 2012) (per curiam); *Williams v. Lara*, 52 S.W.3d 171, 184

---

[5] Section 161.004, titled "Termination of Parental Rights After Denial of Prior Petition to Terminate," reads:

a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:

(1) the petition under this section is filed after the date the order denying termination was rendered;

(2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;

(3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and

(4) termination is in the best interest of the child.

(b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

Tex. Fam. Code Ann. § 161.004 (West 2008).

8

(Tex. 2001). He urges that he "likely" will be subject to "future termination suits" by the Department "given the Department's intention to terminate his rights so [the foster mother] can adopt his children."

The Department agrees that J.C.'s issues are not moot.[6] But the Department does not challenge the jury's best interest finding or the trial court's final decree that does not terminate J.C.'s parental rights. In order to terminate J.C.'s parental rights, the Department had to prove one of the predicate grounds plus that termination was in the best interest of the children. *See* Tex. Fam. Code Ann. § 161.001(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Even if we were to sustain each of J.C.'s issues challenging the jury's findings concerning the grounds for termination, the result is the same: the Department did not satisfy its burden to support termination of J.C.'s parental rights. *See In re A.V.*, 113 S.W.3d at 362 (explaining one predicate ground plus best interest finding necessary to support termination of parental rights).

In this context, we would be issuing an advisory opinion were we to address appellant's second, third, and fourth issues. *See* Tex. R. App. P. 47.1; *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (noting that Texas courts do not have jurisdiction to issue advisory opinions); *Cooper v. Coe*, 188 S.W.3d 223, 229 (Tex. App.—Tyler 2005, pet. denied) (concluding that court could not address cross-appeal issue seeking instruction on remand that certain issues could not be relitigated because addressing these issues would be "an advisory opinion,

---

[6] The attorney ad litem also filed a brief on appeal and agrees that the issues challenging the statutory grounds for termination are not moot.

which is forbidden by the Texas Constitution"); *see also* Tex. Const. art. II, § 1. On this basis, we overrule J.C.'s first issue and decline to address J.C.'s second, third, and fourth issues.[7]

### *Conservatorship*

In his fifth issue, J.C. challenges the jury's finding that the appointment of J.C. as managing conservator was not in the children's best interest and, in the alternative, the trial court's finding that parental possession or access would endanger the children's physical or emotional welfare. J.C. asks this Court to reverse the jury's appointment of the Department as the children's sole managing conservator and dismiss the petition based on the legal insufficiency of the evidence or, in the alternative, render judgment and appoint J.C. as possessory conservator with visitation and access to his children.

The jury was instructed that J.C. "shall be appointed sole managing conservator, in preference of the [Department], unless appointment of [J.C.] would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development." The jury was given the choice between J.C. and the Department and chose the Department as the party that should be appointed the sole managing conservator of the children. The jury was not asked about possessory conservatorship, but the trial court found in the final decree that "appointment of [J.C.] as possessory conservator was not in the children's best interest at this time"

---

[7] We also conclude that the "capable of repetition, yet evading review" exception to the mootness doctrine does not apply here. Under this exception, "'the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot'" and "[t]here must also be a reasonable expectation that the same action will occur again if the issue is not considered." *Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999) (citation omitted).

and that "parental possession or access at this time would endanger the physical or emotional welfare of the children."

*Department as Managing Conservator*

J.C. challenges the legal sufficiency of the evidence to support the jury's finding that the Department should be appointed the managing conservator. "Jury findings underlying a conservatorship appointment are subject to ordinary legal and factual sufficiency review." *In re J.A.J.*, 243 S.W.3d 611, 617 n.5 (Tex. 2007); *see Harris v. Texas Dep't of Family & Protective Servs.*, 228 S.W.3d 819, 822–23 (Tex. App.—Austin 2007, no pet.); *Corrales v. Texas Dep't of Family & Protective Servs.*, 155 S.W.3d 478, 488 (Tex. App.—El Paso 2004, no pet.). We view the evidence in the light most favorable to the jury's finding and indulge every reasonable inference that supports the finding. *Harris*, 228 S.W.3d at 822 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 821–22 (Tex. 2005)). We also "defer to the jury's determinations of the credibility of the witnesses, the weight to be given the testimony, and the resolution of evidentiary conflicts." *Id*. (citing *Wilson*, 168 S.W.3d at 819–20, 822).

Section 263.404 of the family code authorizes the trial court to appoint the Department as managing conservator of a child without terminating the rights of the parent when the trial court finds that "appointment of a parent as managing conservator would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development" and that "it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator." Tex. Fam. Code Ann. § 263.404(a); *see also id.* § 153.002 (West 2008) ("The best interest of the child shall always be the

11

primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."). Among the factors that courts shall consider in making this determination are "the needs and desires of the child" and the child's "special medical or behavior needs that make adoption of the child unlikely." *Id*. § 263.404(b);[8] *see also id*. § 263.307 (West 2008) (stating that "prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest" and listing factors that court should consider "in determining whether the child's parents are willing and able to provide the child with a safe environment"); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (describing factors that courts may consider to determine best interest of child).

We are also mindful that the family code creates "a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child." Tex. Fam. Code Ann. § 153.131(b) (West 2008). Generally, "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child." *Id*. § 153.131(a). In this statutory context and under the applicable standard of review, we turn to a review of the evidence.

The Department presented evidence that supported a finding that J.C. was unable to take care of the children or provide the children with a safe environment. *See id*. § 263.404(b)

---

[8] The other two factors listed in section 263.404(b) do not apply here because of the children's ages. *See* Tex. Fam. Code Ann. § 263.404(b)(1), (2) (West 2008).

(courts shall consider the children's "needs"); *see also id.* § 263.307(b)(1), (7), (8) (factors to consider in determining whether parent able to provide safe environment include "the child's age and physical and mental vulnerabilities," and history of "abuse or assaultive conduct" or "substance abuse" "by the child's family or others who have access to the child's home"); *Holley*, 544 S.W.2d at 372 (factors to consider in determining best interest include parental abilities and conduct, the emotional and physical needs of the child now and in the future, and emotional and physical danger to the child now and in the future).

The children were three and four at the time of trial, and J.C. remained incarcerated with an expected release date of April 2013. He testified that he would need six months to one year after he was released before he would be ready to care for his children. Within months of the dismissal of the first termination proceeding, J.C.'s chosen caregiver, the case manager from Life Works, returned the children to the Department's care. A CPS employee testified that she contacted J.C. within days of receiving notice that the case manager was unable to continue caring for the children, and he provided the name of a friend, but the employee was unable to make contact with the friend. Around December of 2011, J.C. provided the name of his friend who was a nurse as a potential caregiver, but the friend had not seen the children for two years at the time of the jury trial, considered the children's mother "kind of like my sister," and was in contact with her. The children's mother continued to have drug and alcohol problems and had a history of family violence. The home study also had not been completed on the friend.[9]

---

[9] There was no explanation for why the home study had not been completed by the time of trial.

Other evidence supported a finding that the children were doing well in their current placement and that their needs were being met. *See* Tex. Fam. Code Ann. § 263.404(b); *Holley*, 544 S.W.2d at 372 (factors to consider in determining best interest include plans for children and stability of the home or proposed placement). After the children were returned to the Department's care in 2011, the Department placed them with the foster mother. The foster mother and others testified that the children were doing well and bonded with her and that she was meeting their needs. The children had resided with her from around July 2010 to April 2011, maintained contact and visits with her from April to July 2011, and then resided with her from August 2011 to July 2012, the time of the trial. She was a consistent, stable caregiver. The children's therapist recommended that the children stay in their current placement with her and expressed concerns with the children being moved to a new placement. The therapist also testified that the children had aggressive behavior and attachment issues but they were making progress in the foster mother's care.

Other evidence included J.C.'s criminal history and history of family violence and drug abuse. *See* Tex. Fam. Code Ann. § 263.307(b)(7), (8); *Holley*, 544 S.W.2d at 372. While on community supervision, J.C. was convicted for assault family violence as a result of the altercation with the mother in June 2010. A police officer who was at the scene testified that J.C. "stated that he was going to '[b]eat the shit out of the bitch' and '. . . that nobody is going to lay a hand on me like that and get away with it'" when referring to the children's mother. J.C. also testified that he broke the mother's arm during an earlier altercation. J.C. had a history of drug abuse prior to his incarceration in 2010 and admitted to smoking marijuana a few months before the jury trial while

14

he was incarcerated. J.C. also had other disciplinary infractions during his incarceration that were written up, including refusing a drug test and assaulting a staff member.

J.C. presented evidence that supported findings that he loved his children and was bonded with them, that he had the necessary parenting skills to take care of them, that he had a job offer when he was released from prison, that his friend who was a nurse was an appropriate placement, and that she would be able to take care of the children until he was ready for them. It was within the jury's province, however, to determine the credibility of the witnesses and the weight to be given to their testimony. *Harris*, 228 S.W.3d at 822–23 (deferring to jury's determinations of credibility of witnesses, weight to be given to their testimony, and resolution of evidentiary conflicts). The jury could have resolved the conflicting evidence against J.C. and credited the evidence of J.C.'s criminal and violent conduct and his inability to provide an appropriate caregiver for his children while he was in prison to conclude that the appointment of J.C. as the managing conservator would significantly impair the children's physical health or emotional development. *See* Tex. Fam. Code Ann. § 153.131. Viewing the evidence in the light most favorable to the jury's finding, we conclude the evidence was legally sufficient to support the jury's finding that the Department should be appointed the sole managing conservator of the children. *See In re J.A.J.*, 243 S.W.3d at 617 n.5.

*Denial of Possessory Conservatorship*

In the alternative, J.C. contends that the trial court abused its discretion by failing to appoint J.C. possessory conservator and denying him visitation and access to his children because there was no evidence that such appointment was not in the children's best interest or that visitation

15

and access would endanger their welfare. A trial court must appoint as a possessory conservator "a parent who is not appointed as a sole or joint managing conservator unless [the court] finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child." Tex. Fam. Code Ann. § 153.191.

We review a trial court's conservatorship determinations for abuse of discretion and may reverse "only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d at 616 (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). "We view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment." *Earvin v. Texas Dep't of Family & Protective Servs.*, 229 S.W.3d 345, 350 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citation omitted). Further, "[w]e give wide latitude to a trial court's decision on custody, control, possession, and visitation matters." *Id.* (citing *Gillespie*, 644 S.W.2d at 451).

In addition to the evidence stated above as to the jury's finding that the Department should be appointed managing conservator, J.C.'s friend who took the children "twice a week" for "between three and five weeks" to visit J.C. in prison testified that the visits were "overwhelming" for the children and that they would get "upset" at the end of the visits. A CPS employee also testified that it was "not common practice to take children this young to jails to visit their parents" and that her experience with jail visits was that they were "scary" for small children, that the children did not understand, and that the visits "create[ ] nightmares" and were "not a positive experience." J.C. also admitted to multiple infractions, including smoking marijuana only a few months before the jury trial, during his incarceration. Given this evidence, we cannot conclude that the trial court

16

abused its discretion by denying J.C.'s request to be appointed a possessory conservator with visitation and access to the children at this time. *See Earvin*, 229 S.W.3d at 350. We overrule appellant's fifth issue.

## CONCLUSION

For these reasons, we affirm the trial court's final decree.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed: April 3, 2013