**Affirm in part and reverse and render in part; Opinion Filed December 9, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00652-CV

## IN THE INTEREST OF D.P.G., A CHILD

**On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court Cause No. 87836**

## MEMORANDUM OPINION
Before Justices Schenck, Molberg, and Nowell
Opinion by Justice Schenck

Mother and Father appeal the trial court's order terminating their respective parental rights to D.P.G.[1]  They both challenge the legal and factual sufficiency of the evidence to support the trial court's finding they constructively abandoned D.P.G. as the predicate ground for termination of their parental rights.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N).  Mother and Father do not challenge the trial court's finding termination of their parental rights is in the best interest of D.P.G. We find jurisdiction over mother's appeal and affirm the trial court's termination order as to her.  We reverse the termination order as to Father.  Because the

---

[1] Mother and Father are not married and filed separate appeals.

dispositive issues in this case are settled in law, we issue this memorandum opinion. See TEX. R. APP. P. 47.4.

## JURISDICTION OVER MOTHER'S APPEAL

As a threshold matter, we must determine whether we have jurisdiction over Mother's appeal.[2] The following undisputed facts are germane to this determination. The termination hearing concluded on May 6, 2020, with the trial court finding Mother's parental rights should be terminated. Mother was not present at the hearing, but was represented by trial counsel. On May 14, the trial court entered an Order Appointing Appellate Counsel in which it stated it found Mother's parental rights should be terminated, that Mother is entitled to appellate counsel to conduct the appeal, and ordered the appointment of Toby Wilkinson as that counsel. The trial court did not send a copy of that order to Wilkinson, and there is no indication in the record that the order was sent to Mother. It is uncontested that Wilkinson only became aware of his appointment when he received an email from the official court reporter on July 8, 2020, in connection with the filing of the reporter's record with this Court. He then discovered that the trial court had entered its order of termination on June 2. On July 9, he filed a formal notice of appeal and motion for extension of

---

[2] Jurisdiction over Father's appeal is not in question. The trial court entered its Order of Termination on June 2, 2020, and Father filed his notice of appeal on June 19, 2020, within 20 days of the trial court's order. *See* TEX. R. APP. P. 28.4 (appeals in parental termination cases are governed by rules of appellate procedure for accelerated appeals), 26.1(b) (notice of appeal in accelerated appeal must be filed within 20 days after the judgment or order is signed).

time to file on behalf of Mother. Mother's appellate counsel concedes that Mother's motion for extension of time was not timely filed, but urges, given the lack of notice of her appellate counsel's appointment, application of the rules governing accelerated appeals violates Mother's due process rights. Given the unique nature of this proceeding, the elevated interests involved, and that the delay is entirely a product of state action, we conclude that it does.

In this case, the State, through the Texas Department of Family and Protective Services (the "Department"), sought to terminate Mother's parental rights and the judge, also acting as an agent of the State, albeit a separate branch of it, concluded that her rights should be terminated, and appointed counsel to represent Mother on appeal, as required by statute. *See* TEX. FAM. CODE ANN. § 107.301(a)(1). Yet the court did not notify the individual charged with representing Mother's interests on appeal of the appointment, and that counsel was not afforded any opportunity to timely file a notice of appeal or a timely motion for extension of time to file the notice. *See* TEX. R. APP. P. 28.4 (appeals in parental termination cases are governed by rules of appellate procedure for accelerated appeals), 26.1(b) (notice of appeal in accelerated appeal must be filed within 20 days after the judgment or order is signed). Thus, we are left to consider: (1) whether any filing in the trial court is the functional equivalent of a written notice of appeal and to consider Mother's due process argument; and (2) whether the failure to notify counsel would, on the facts before us, deny mother due process in any event.

–3–

We begin by noting that a notice of appeal is to be filed in the trial court, not this Court. *See* TEX. R. APP. P. 25.1(a). The purpose of the notice of appeal is to apprise the trial court and the opposing party that the party suffering an adverse judgment intends to appeal and sets the appellate process in motion. 4 C.J.S. § 479. In the context of parental termination, subject to a statutory obligation to appoint counsel to pursue an appeal, one might wonder, what further purpose the seprate notice from appointed counsel achieves? While an order appointing counsel for a possible appeal, *standing alone*, obviously does not absolve counsel with notice of his appointment of his obligation to file the necessary notice, we would be inclined to find that when the trial court fails to give notice of the appointment to the very person charged with timely filing it, the order of appointment has served every legitimate interest underlying the requirement of filing a notice of appeal. Accordingly, under the circumstances presented here, it might be argued that the appointment either served as the notice of appeal or that the failure to serve notice to counsel operated as a functional denial of notice of the judgment to the party, implicating rule 306a(4).[3] At this stage we are aware of no controlling authority developing those questions and will pretermit further development of them because,

---

[3] While in the ordinary case, notice to a party of a judgment surely suffices to trigger the relevant appellate periods, this is hardly the ordinary case. The State is engaged with a litigant whom it contends is manifestly unable to manage her affairs. In a typical case, we would fairly assume that litigants are communicating with their counsel to confirm timely management of deadlines and when selecting appellate counsel are tracking developments in their case. In this case, however, there is no indication mother was even notified of the appointment and, had she been notified, she would likely presume the lawyer was also notified and acting according to its terms and purposes.

as set forth *infra*, we conclude that application of the rules concerning perfection of Mother's appeal is unconstitutional as applied here.

Parental rights are "far more precious than any property right," and when the State initiates a termination proceeding, "it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982). The termination of parental rights involves fundamental constitutional rights, and our constitution and statutes provide for one level of appeal as a matter of right in termination cases. *In re T.V.*, 8 S.W.3d 448, 449 (Tex. App.—Waco 1999, no pet.). As we have previously noted, the accelerated deadline to file a notice of appeal in parental terminations cases is a trap for the unwary. *In re R.J.S.*, 219 S.W.3d 623, 627 (Tex. App.—Dallas 2007, pet. denied). Because of the accelerated nature of these cases, trial courts *must* act expeditiously when appointing new counsel for the appeal. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). In doing so, it is imperative that the court notify court appointed counsel of the fact of the appointment. Failure to do so creates the risk, realized in this case, that counsel will not have the ability under our rules to timely file the notice of appeal. Worse still, where the parent is informed of the appointment, or even where the parent is merely deemed to be on notice of it, the appointment order would affirmatively discourage the parent from pursuing a timely *pro se* appeal or retaining separate counsel. While there is no federal due process requirement by which the states would be obliged to

provide for appellate review of trial court judgments,[4] once the right to pursue appellate review has been recognized, the State itself cannot arbitrarily deny it. *Griffin v. Illinois*, 351 U.S. 12, 18 (1956); *Lindsey v. Normet*, 405 U.S. 56, 77 (1972); *see also* TEX. CONST. art. 1 §13.

While the Department, the parent, and the child all share an interest in a quick and final decision, finality cannot trump a parent's constitutional right to be heard, including by appeal where the right to appeal exists. *Stanley v. Illinois*, 405 U.S. 645, 646 (1972); *In the Interest of M.S.*, 115 S.W.3d 534, 548 (Tex. 2003); *see also In re B.G.*, 317 S.W.3d 250, 258 (Tex. 2010) (holding failure to file requisite statement of appellate points could not, consistent with due process, form a basis for denying parent appellate record and concluding family code section 263.405 was unconstitutional as applied to parent); *In re J.O.A.*, 283 S.W.3d at 339, 347 (holding that despite parents' failure to file timely statement of appellate points, due process required they be allowed to appeal; "section 263.405(i)[5] is unconstitutional as applied when it precludes a parent from raising a meritorious complaint about the insufficiency of the evidence supporting the termination order").

---

[4] *M.L.B. v. S.L.J.*, 519 U.S. 102, 131 (1996) (Thomas, J., dissenting) (acknowledging the court's "oft-affirmed view that due process does not oblige the states to provide for any appeal, even from a criminal conviction").

[5] Section 263.405(i) has been repealed. It barred an appellate court's consideration of any issue not presented to the trial court in a timely filed statement of points.

To be clear, this case does not involve private litigants bungling deadlines in a contest implicating their respective property rights. Here, the State, through its executive branch, sought to terminate Mother's parental rights. Thus, this case involves a fundamental liberty interest with heightened procedural protections. Mother is indigent; thus, the trial court was required to (and did) appoint counsel to represent her. TEX. FAM. CODE ANN. § 107.301(a)(1). The statutory right to appointed counsel gives rise to constitutional considerations of due process in the administration of that right. *In re S.K.S.*, 236 S.W.3d 875, 891 (Tex. App.—Texarkana 2007, pet. denied). And yet, the trial court, another State actor, in appointing counsel failed to give notice of the appointment. In effect, the trial court failed to provide Mother with counsel, as mandated by statute, and foreclosed her right to appeal within the rules. Accordingly, we conclude that section 263.405 of the family code (acceleration of appeals of termination orders) and the appellate rules concerning the perfection of appeals, as applied in this particular case, with respect to Mother, are unconstitutional and do not preclude this Court from considering Mother's appeal. *See, e.g.*, *In re E.R.*, 385 S.W.3d 552, 562, 567 (Tex. 2012) (due process prevails over state law time limit).

## BACKGROUND

D.P.G. was born on August 9, 2019. He was removed from his parents' care shortly thereafter and placed into foster care due to a report that Mother had abused amphetamines and during her pregnancy, as confirmed by D.P.G.'s positive test

results for amphetamines.[6]  Both parents met with a Child Protective Services caseworker on August 15, 2019, to discuss possible family placement for the child. The maternal grandparents and a paternal aunt were identified as possible placements.  Those potential placements did not come to fruition, however.

On August 16, the Department filed an Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent–Child Relationship, seeking, among other things, to immediately be named the sole managing conservator of D.P.G.  The record establishes Mother was served with the petition, but Father was not.

Early in the case, the Department prepared a family service plan to address the issues that led to the removal of D.P.G. from Mother's care.  That plan was prepared with Mother's input.  The plan's goal was for reunification and included services that were geared toward alleviating or mitigating the cause necessitating the placement of D.P.G. in foster care.  The Department did not prepare a family service plan for Father, presumably as his paternity had not yet been confirmed.

The trial court held an adversary hearing on August 22.  The appellate record does not contain a transcript of that hearing.  The temporary order entered following the hearing indicates Mother and Father appeared at that hearing, both unrepresented by counsel.  At that hearing, the trial court ordered Mother to (1) submit to drug and

---

[6] Mother has two other children who are not in her care.  Father is not related to those children.

alcohol dependency assessments, (2) participate in psychosocial evaluation and counseling, (3) attend parenting classes, (4) submit to drug testing, (5) abstain from using drugs, (6) attend Narcotics Anonymous/Alcoholics Anonymous ("NA/AA") meetings three times a week, (7) maintain stable housing and income, and (8) comply with each requirement set out in the Department's service plan, which included attending Intensive Outpatient Program/Supportive Outpatient Program ("IOP/SOP") classes. The trial court also ordered Father to submit to genetic tests to determine parentage.

A status hearing was conducted on October 15. The appellate record does not contain a transcript of that hearing. The status hearing order indicates Father appeared at that hearing, unrepresented by counsel, and Mother did not appear. Father was apparently incarcerated at that time as he appeared at the hearing wearing an orange jumpsuit.

A permanency hearing took place on January 9, 2020. Father attended that hearing, again unrepresented by counsel; Mother did not attend. The transcript of that hearing reveals that Father's principal concern to that point was with establishing his biological relation to D.P.G. Father was advised the genetic testing had established that he is D.P.G.'s father. The Department asked the court to order Father to (1) complete a substance abuse assessment, (2) attend NA/AA meetings, (3) attend IOP/SOP classes, (4) submit to a psychosocial evaluation, and (5) attend counseling and parenting classes. The court did so. In addition, the Department

–9–

advised, at this point, that it was seeking to terminate Mother's and Father's parental rights.[7]  As a result of the Department's pronouncement, the trial court appointed trial counsel to represent Mother and Father.  On January 23, the trial court entered an order adjudicating Father as the biological parent of D.P.G.

A bench trial took place by video conference on April 29 and May 6.  Mother and Father appeared solely through their trial counsel.  The trial court heard testimony from Amber Davidson (Department caseworker), Larry Barksdale (Child Protective Services supervisor), and Maria Yanez (Court Appointed Special Advocates (CASA) advocate).

*Testimony of Amber Davidson*

Davidson testified that, at the adversary hearing in August 2019, Mother and Father told her they were living in a motel, and Father admitted to marijuana use. Davidson met with Mother on August 28, 2019.  At that meeting, Mother admitted she has a substance abuse problem, her drugs of choice are methamphetamine and marijuana, and she had been struggling with addiction for a couple of years.

Davidson met with Mother and Father during their one and only visitation with D.P.G. on September 3, 2019.  During that meeting, Davidson gave Mother and Father her contact information, including phone numbers and email address.

---

[7] Prior to this point, the record does not indicate that Father was served or otherwise advised of any effort to terminate his rights.  Rather, as noted, Father appeared to be first interested in establishing the fact of paternity.

Davidson recalled that Mother and Father argued as to whether Father was in fact D.P.G.'s father. Another visitation was scheduled for September 23. Neither parent attended. According to Davidson, neither parent made any attempt to see D.P.G. after September 3, and during the pendency of the case, they had not sent any cards, letters, gifts or anything at all to indicate they want to maintain a relationship with the child. Davidson last communicated with Mother on September 12, when Mother texted her new contact information, including an apartment address. Davidson attempted to see that apartment on September 17 and 24, but was not able to obtain access to the apartment. Davidson did not advise Mother and Father of her plan to visit their apartment prior to her arrivals. Thereafter, Davidson attempted to contact Mother through Mother's mother without success.

The Department attempted to place D.P.G. with a relative. The two potential placements did not work out.[8] The Department prepared a family service plan for Mother, with Mother's input. Davidson confirmed her review of the case file revealed the Department did not prepare a family service plan for Father. Mother, who did participate in a service plan nevertheless failed to complete a drug and alcohol assessment or the requisite parenting classes, did not attend any sessions for NA/AA, did not participate in IOP/SOP classes, and did not maintain stable income

---

[8] The maternal grandparents already had custody of Mother's eldest child, and due to their age, they were not in a position to care for an infant. Father's sister likewise indicated that she was not able to care for an infant.

–11–

and housing, as she promised in entering the service plan. Mother completed the initial random drug testing, but failed to submit to subsequent testing as agreed. At the adversary hearing, before he was determined to be the biological parent, Father was ordered to submit to drug testing. He did not do so.

Mother and Father were both incarcerated at some time during the pendency of the case. Father was still incarcerated at the January 9, 2020 permanency hearing and indicated that he believed he would be released in a couple of weeks. Davidson was not aware of any signed order requiring Father to complete the services the Department requested. Davidson believed Mother was released from jail in March 2020, but admitted she did not know whether she had been released. She also admitted she did not know whether Father had been released, but thought he had been based on an inmate search. Davidson attempted to locate Mother and Father by reaching out to Mother's mother and Father's sister. Those attempts were not successful.

Davidson testified D.P.G. is thriving in his foster placement. He is developmentally on target and is well bonded with the foster family. The foster parents are interested in adopting D.P.G. Davidson expressed her belief that it is in the best interest of D.P.G. to terminate Mother's and Father's parental rights because they had not attempted to complete the court ordered services, did not have a stable home, and could not take care of themselves.

## Testimony of Larry Barksdale

Barksdale was present at the permanency hearing on January 9, 2020. He testified that Father was present at that hearing. At that hearing, the Department requested that the court order Father to complete various services. The court did so. No written order was provided to Father, and Father never contacted the Department asking for an order. Father was in shackles at that hearing and could not take notes about the services he was to complete. Father indicated he believed he would be released from jail in a couple of weeks. Barksdale testified that had Father been released at that time, he would have had a chance to complete the ordered services. Barksdale admitted the services were not designed for an incarcerated person and he did not know if Father could participate in the services where he was being detained. Father failed to maintain contact with the Department, and Barksdale did not receive any information from Father indicating he was working on completing the required services.

## Testimony of Maria Yanez (CASA volunteer)

Yanez attempted to observe a visit between Mother and D.P.G. at the end of September 2019, but Mother did not attend. Yanez expressed her belief Mother and Father cannot meet D.P.G.'s physical and emotional needs due to their drug use. She received no indication that Mother and Father have a stable home. She was unable to find an address for them.

Yanez was able to observe D.P.G. with his foster family. Yanez described D.P.G. as being a happy baby and indicated that he and the other children in the home were "engage[d] as a normal family." Yanez confirmed that she had not received any cards, letters, gifts or anything that would indicate Mother and Father want to continue a relationship with D.P.G. Like Davidson, Yanez expressed her belief that it was in the best interest of D.P.G. to terminate Mother's and Father's parental rights. She confirmed the foster parents are motivated to adopt D.P.G. and stated the foster family members are the only faces D.P.G. has consistently seen since his birth.

At the conclusion of the trial on the merits, the trial court found Mother and Father had constructively abandoned D.P.G. and the Department had made reasonable efforts to return the child to Mother and Father, Mother and Father had not regularly visited or maintained significant contact with D.P.G., and Mother and Father had demonstrated an inability to provide D.P.G. with a safe environment. TEX. FAM. CODE ANN. § 161.001(b)(1)(N). The court further found that termination of the parent–child relationship between Mother and Father and D.P.G. to be in the best interest of D.P.G. On June 2, 2020, the trial court entered its order terminating Mother's and Father's parental rights to D.P.G and appointing the Department Permanent Managing Conservator of D.P.G.

## DISCUSSION

The involuntary termination of parental rights involves fundamental

–14–

constitutional rights. *In re G.M.*, 596 S.W.2d 846 (Tex. 1980). The Supreme Court has stated that a natural parent's desire for—and his right to—the companionship, care, custody, and management of his child is an interest "far more precious than any property right." *Santosky*, 455 U.S. at 758–59. A termination decree is final and irrevocable, divesting for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Courts have recognized that termination of a parent's rights to his child is "traumatic, permanent, and irrevocable." *In re M.S.*, 115 S.W.3d 534, 549 (Tex. 2003). For these reasons, the Texas Family Code and the Due Process Clause of the United States Constitution require that grounds for termination of parental rights be proved by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001; *Santosky*, 455 U.S. at 753–54. And for the same reasons, we strictly construe involuntary termination statutes in favor of the parent. *In re E.R.*, 385 S.W.3d at 563.

To apply the clear and convincing evidence standard of proof in parental termination cases, we ask whether the proof is such that a reasonable fact finder could have formed a firm belief or conviction about the truth of the allegations. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). In our legal sufficiency review, we consider all the evidence in the light most favorable to the finding. *Id.* at 266. We assume that the fact finder resolved disputed evidence in favor of the finding if a reasonable fact finder could do so, and we disregard all contrary evidence that a

reasonable fact finder could have disbelieved or found incredible. *Id.*

For a trial court to terminate a parent's right to his child, the State must prove by clear and convincing evidence that the parent committed an act prohibited under the family code's section 161.001(b)(1) and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1–2).

In this case, the trial court, as the fact finder, concluded Mother and Father constructively abandoned D.P.G., a predicate ground for termination under section 161.001(b)(1) of the family code. *Id* § 161.001(b)(1)(N). To establish constructive abandonment, the Department had to prove by clear and convincing evidence the child has been in the permanent or temporary managing conservatorship of the Department for not less than six months; and (i) the Department has made reasonable efforts to return the child to the parent; (ii) the parent has not regularly visited or maintained significant contact with the child; and (iii) the parent has demonstrated an inability to provide the child with a safe environment. *Id.* If there is legally or factually insufficient evidence of one or more of these elements, then the finding of constructive abandonment fails. *In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied).

**Mother's Appeal**

Mother does not dispute that D.P.G. was in the Department's care for more than six months, that the Department made reasonable efforts to return D.P.G. to her, and that she did not regularly visit or maintain significant contact with D.P.G. She

challenges the trial court's finding concerning the final element only, that she demonstrated an inability to provide D.P.G. with a safe environment. In doing so, Mother claims the Department was required to conduct a social study of Mother's home to determine whether she could provide D.P.G. with a safe environment and that the Department could have conducted such a study because it always knew where Mother resided.

As an initial matter, we note the record establishes the Department did not always know the whereabouts of Mother and Mother failed to maintain contact with the Department to make a home study possible. In addition, Mother fails to support her argument the Department had a duty to conduct a home study with any legal authority and ignores the fact that the safe environment determination encompasses a multitude of factors, several of which support the trial court's finding she has demonstrated an inability to provide D.P.G. with a safe environment. *In re N.A.V.*, No. 04-19-00646-CV, 2020 WL 1250830, at *6 (Tex. App.—San Antonio Mar. 17, 2020, pet. denied) (mem. op.). Those factors include the child's age and physical and mental vulnerabilities; the willingness and ability of Mother to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of Mother to effect positive environmental and personal changes within a reasonable period of time; and whether Mother demonstrates adequate parenting skills. *See In re M.R.J.M.*, 280 S.W.3d 494, 506 (Tex. App.—Fort Worth 2009, no pet.).

The trial court heard evidence D.P.G. came into the care of the Department days after his birth due to allegations of substance abuse. Mother admitted to having used methamphetamine and marijuana throughout her pregnancy knowing that doing so was harmful to the child. Upon his birth, D.P.G. tested positive for drugs. At the time of trial, D.P.G. was less than a year old and in need of constant care and attention. A service plan was put into place for Mother to foster reunification. Early in the case, Mother was ordered to complete drug and alcohol assessment, to submit to a psychosocial evaluation and individual counseling, to complete parenting classes, to attend NA/AA or Celebrate Recovery three times a week, to maintain stable income and housing, and to submit to random drug testing. Mother did not complete any of the required services, other than submitting to the initial drug testing. After September 2019, Mother did not maintain contact with the Department and did not provide the Department with any information about her living or employment circumstances. In light of the foregoing, the trial court could reasonably find by clear and convincing evidence that the Department proved Mother demonstrated an inability to provide D.P.G. with a safe environment. *See, e.g., In re G.P.*, 503 S.W.3d 531, 534 (Tex. App.—Waco 2016, pet. denied) (upholding finding of failure to provide safe environment where mother failed to provide Department with any information about her living or employment circumstances, failed to make child support payments, failed to seek out and accept counseling services, refused to take required drug tests, and failed to even maintain

–18–

contact with her child); *In re J.J.O.*, 131 S.W.3d 618, 630 (Tex. App.—Fort Worth 2004, no pet.) (considering evidence that mother had failed a drug test, had attended only half of her parenting classes, and did not complete a psychological evaluation or participate in counseling in upholding the trial court's determination she had demonstrated inability to provide her child with safe environment). We conclude that the evidence was legally and factually sufficient to support the trial court's finding on Mother's ability to provide a safe environment for D.P.G. We overrule Mother's sole issue.

**Father's Appeal**

Father does not dispute that D.P.G. was in the Department's care for more than six months, and that he did not regularly visit or maintain significant contact with D.P.G. He challenges the trial court's findings the Department made reasonable efforts to return D.P.G. to Father, and Father demonstrated an inability to provide D.P.G. with a safe environment. For the reasons set forth herein, we conclude the Department failed to present clear and compelling proof Father could not provide D.P.G. with a safe environment, and pretermit consideration of his complaint concerning the trial court's finding the Department made reasonable efforts to return the child to Father. TEX. R. APP. P. 47.1; *In re D.T.*, 34 S.W.3d at 633 (holding that constructive-abandonment finding fails if there is no evidence of one or more elements of subsection (N).

The evidence established D.P.G. came into the Department's care due to

Mother's actions, not Father's. There is no evidence Father had knowledge of Mother's drug use during her pregnancy. In addition, in this case paternity was questioned, and was the principal point in issue from Father's perspective until it was confirmed. Nevertheless, Father appeared at the adversary hearing, the status hearing and the permanency hearing. Father did not receive confirmation of his parentage until the permanency hearing, which took place five months after D.P.G. was born and only approximately three months prior to trial. Father was still incarcerated at that time. Unlike Mother, the Department did not prepare a service plan for Father. Father was not ordered to complete services until January 2020 and the Department failed to establish it was possible for Father to participate in and complete the required services while he was incarcerated or at any time between confirmation of his parental relation and the trial. Indeed, the record is unclear as to when Father may have been released from jail, if at all. Because Father was not the reason for the removal of D.P.G., and given the uncertainty of Father's biological relation to D.P.G. and the circumstances surrounding the court's order that he complete services, the timing of that order, and the effect imprisonment may have had on Father's ability to work on completing the services, we conclude Father's alleged failure to participate in and complete court ordered services does not establish he was unable to provide D.P.G. with a safe environment at the time of trial.

As to other factors that may be considered in connection with a finding of

inability to provide a child with a safe environment, the burden of proof was on the Department to prove *Father*'s inability to provide D.P.G. with a safe environment, not on Father to prove his ability. *In re A.S.*, 261 S.W.3d 76, 90 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Davidson's conclusory opinion that Father had not shown any stability or ability to care for the child is not supported by any facts. Thus, the finding that Father has demonstrated an inability to provide D.P.G. with a safe environment is not supported by clear and convincing evidence. *See In re J.L.G.*, No. 06-16-0087-CV, 2017 WL 1290895, at *10 (Tex. App.—Texarkana Apr. 6, 2017, no pet.) (mem. op.) (holding evidence insufficient for constructive abandonment when there was no evidence, other than conclusory opinions, regarding father's financial resources, employment history, home environment, parenting skills, or ability or inability to care for the child); *see also Earvin v. Dep't of Family & Protective Servs.*, 229 S.W.3d 345, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We conclude that the evidence is legally insufficient to support the trial court's finding concerning Father's ability to provide D.P.G. with a safe environment. TEX. R. APP. P. 47.1. Because the trial court's finding of constructive abandonment under subsection (N) is not supported by legally sufficient evidence, the finding cannot support the trial court's order of termination. *See* TEX. FAM. CODE ANN. § 161.001(b). We sustain Father's sole issue.

**Department as Managing Conservator**

The Department requested conservatorship pursuant to Family Code section

–21–

153.131 and the trial court made the specific findings that the statute requires: that appointment of Father as D.P.G.'s managing conservator would not be in his best interest because it would significantly impair his physical health or emotional development, and that appointment of the Department was in D.P.G.'s best interest. TEX. FAM. CODE ANN. § 153.131. Father did not specifically appeal these findings or the conservatorship order. Because appointment of the Department as managing conservator under section 153.131 is a basis for appointment separate and apart from appointment solely as a consequence of a termination decree, separate challenges are required on appeal. *In re J.A.J.*, 243 S.W.3d 611, 613 (Tex. 2007). Accordingly, we do not disturb the trial court's order awarding the Department permanent managing conservatorship.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to D.P.G. We reverse the trial court's order terminating Father's parental rights to D.P.G., and we render judgment denying the Department's request for termination of Father's parental rights.

/David J. Schenck/

200652F.P05

DAVID J. SCHENCK
JUSTICE

–22–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF D.P.G., A
CHILD,

No. 05-20-00652-CV

On Appeal from the 196th Judicial
District Court, Hunt County, Texas
Trial Court Cause No. 87836.
Opinion delivered by Justice
Schenck. Justices Molberg and
Nowell participating.

In accordance with this Court's opinion of this date, the trial court's June 2, 2020, Order of Termination in this cause is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order finding Father constructively abandoned D.P.G. and terminating the parent child relationship between Father and D.P.G. and **RENDER** judgment denying the Texas Department of Family and Protective Services' request that Father's parental rights be terminated as to D.P.G. In all other respects, the trial court's order is **AFFIRMED**.

Judgment entered this 9th day of December, 2020.